*1217 OPINION
BERZON, Circuit Judge:
Our question is whether the Constitution permits the Arizona legislature to prohibit abortion beginning at twenty weeks gestation, before the fetus is viable. We hold that it does not.
Arizona House Bill 2036 (“H.B.2036” or “the Act”), enacted in April 2012, forbids, except in a medical emergency, abortion of a fetus determined to be of a gestational age of at least twenty weeks. Arizona law separately prohibits abortions after fetal viability unless necessary to preserve the pregnant woman’s life or health. See Ariz. Rev.Stat. § 36-2301.01(A)(l). The challenged provision in Section 7 of H.B.2036 (“Section 7” or “the twenty-week law”)[1] extends the abortion ban earlier in pregnancy, to the period between twenty weeks gestation and fetal viability. Because Section 7 deprives the women to whom it applies of the ultimate decision to terminate their pregnancies prior to fetal viability, it is unconstitutional under a long line of invariant Supreme Court precedents.
Since Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), the Supreme Court case law concerning the constitutional protection accorded women with respect to the decision whether to undergo an abortion has been unalterably clear regarding one basic point, although it has varied in other respects: a woman has a constitutional right to choose to terminate her pregnancy before the fetus is viable. A prohibition on the exercise of that right is per se unconstitutional. While the state may regulate the mode and manner of abortion prior to fetal viability, it may not proscribe a woman from electing abortion, nor may it impose an undue burden on her choice through regulation.
The challenged Arizona statute’s medical emergency exception does not transform the law from a prohibition on abortion into a regulation of abortion procedure. Allowing a physician to decide if abortion is medically necessary is not the same as allowing a woman to decide whether to carry her own pregnancy to term. Moreover, regulations involve limitations as to the mode and manner of abortion, not preclusion of the choice to terminate a pregnancy altogether. Arizona’s twenty-week law is a preclusion prior to fetal viability and is thus invalid under binding Supreme Court precedent.
The district court erred in denying declaratory and injunctive relief and entering judgment in favor of the State. We therefore reverse.
Background
I.
On April 12, 2012, Arizona Governor Jan Brewer signed H.B.2036 into law, amending title 36, chapter 20, article 1 of the Arizona Revised Statutes, which governs the availability and performance of abortions in the state. The Act was to go into effect on August 2, 2012, but we granted an emergency injunction on August 1, 2012, staying enforcement of the challenged provision pending this appeal.
The challenged portion of Section 7, codified at Arizona Revised Statutes § 36-2159, reads:
A. Except in a medical emergency, a person shall not perform, induce or attempt to perform or induce an abortion unless the physician or the referring physician has first made a determination of the probable gestational age of the *1218 unborn child. In making that determination, the physician or referring physician shall make any inquiries of the pregnant woman and perform or cause to be performed all medical examinations, imaging studies and tests as a reasonably prudent physician in the community, knowledgeable about the medical facts and conditions of both the woman and the unborn child involved, would consider necessary to perform and consider in making an accurate diagnosis with respect to gestational age. B. Except in a medical emergency, a person shall not knowingly perform, induce or attempt to perform or induce an abortion on a pregnant woman if the probable gestational age of her unborn child has been determined to be at least twenty weeks.
Ariz.Rev.Stat. § 36-2159. Arizona law defines “medical emergency” as:
a condition that, on the basis of the physician’s good faith clinical judgment, so complicates the medical condition of a pregnant woman as to necessitate the immediate abortion of her pregnancy to avert her death or for which a delay will create serious risk of substantial and irreversible impairment of a major bodily function.
Ariz.Rev.Stat. § 36-2151(6). The stated purpose of the Act is to “[pjrohibit abortions at or after twenty weeks of gestation, except in cases of a medical emergency, based on the documented risks to women’s health and the strong medical evidence that unborn children feel pain during an abortion at that gestational age.” H.B. 2036, sec. 9(B)(1).[2] The Act lists a number of legislative findings in support of the assertions in the purpose provision, with citations to medical research articles. See H.B.2036, sec. 9(A)(l)-(7).
II.
The plaintiffs in this action are three board-certified obstetrician-gynecologists who practice in Arizona (“the Physicians”). In July 2012, they filed suit in the United States District Court for the District of Arizona, seeking declaratory and injunc-tive relief against enforcement of Section 7 on behalf of themselves and of their patients wishing to terminate pre-viability[3] pregnancies at or after twenty weeks.[4] Their complaint named three state defendants and two county defendants: the Attorney General of Arizona, Tom Horne; the Arizona Medical Board; and the Executive Director of the Arizona Medical Board, Lisa Wynn (collectively “State Defendants”); the County Attorney for Pima County, Barbara LaWall; and the County Attorney for Maricopa County, William Montgomery.
In their respective practices, each of the Physicians performs abortions before fetal viability and at and after twenty weeks gestational age. They assert that their patients seek pre-viability abortions “for a variety of reasons, including that continuation of the pregnancy poses a threat to their health, that the fetus has been diagnosed with a medical condition or anomaly, or that they are losing the pregnancy *1219 (‘miscarrying’).” Under Arizona’s twenty-week law, the complaint alleges, these women will be unable to terminate their pregnancies before fetal viability unless they have a medical emergency falling within the Act’s narrow exception. Therefore, the Physicians assert, the law violates their patients’ Fourteenth Amendment substantive due process rights.
The Physicians moved for a preliminary injunction, which the State Defendants and Defendant Montgomery opposed. Defendant Montgomery also filed a motion to dismiss the action. After Defendant La-Wall expressed support for the preliminary injunction, Defendant Montgomery sought her dismissal as a party defendant.[5]
On July 25, 2012, the district court held a hearing on the Physicians’ motion for a preliminary injunction and the motions to dismiss. Following the hearing, and without any prior notice to the parties, the court sua sponte and retroactively consolidated the preliminary injunction hearing with a trial on the merits and issued a final decision denying all relief. The order denied the Physicians’ requests for both preliminary and permanent injunctions and for a declaratory judgment. The court simultaneously denied Defendants’ motion to dismiss the action and denied as moot the motion to dismiss Defendant LaWall.
The district court’s decision was premised on three central conclusions: First, although the Physicians characterized their suit as an as-applied challenge because limited to those post-twenty-week abortions that occur before viability, the court held that the suit is properly considered a facial challenge. The court recognized that the application of Section 7 challenged by the Physicians is the law’s only effective application: to prohibit pre-viability abortions from twenty weeks gestation.[6]
Second, the court held that Section 7 regulates, rather than prohibits, abortion at and after twenty weeks gestational age, principally because it contains a medical emergency exception permitting some abortions after twenty weeks gestation. The law “is not a ban on previability abortions,” the court stated, “but is rather a limit on some previability abortions between 20 weeks gestational age and viability.”
Finally, the court determined that, considered as a regulation rather than a prohibition, the challenged provision of H.B. 2036 may “prompt a few women, who are considering abortion as an option, to make the ultimate decision earlier than they might otherwise have made it,” but the law does not impose a substantial obstacle to abortions, because it does not strip women of the ability to choose to terminate their pregnancies before twenty weeks. This “time limitation” on the right to obtain a pre-viability abortion, the district court concluded, is justified by legitimate state interests in fetal life and the health of pregnant women.
For the reasons summarized above, the district court concluded that the Physicians’ facial challenge to Section 7 fails. *1220 In the district court’s view, an as-applied challenge by an affected pregnant woman would be the proper vehicle for determining whether the law unconstitutionally deprives a woman of “the right to make the abortion choice previability.”
The Physicians timely appealed.
Discussion
I.
We begin by addressing two preliminary issues.
First, the district court presumed the parties “agree that the facts at issue in this case are not materially in dispute, and agree that the Court needs no additional evidence or legal argument to reach its decision.” On that basis, the court invoked Federal Rule of Civil Procedure 65(a)(2) and consolidated the preliminary injunction hearing with a trial on the merits when it issued its opinion.
“A district court may consolidate a preliminary injunction hearing with a trial on the merits,” but only when it provides the parties with “clear and unambiguous notice [of the intended consolidation] either before the hearing commences or at a time which will afford the parties a full opportunity to present their respective cases.” Air Line Pilots Ass’n Int’l v. Alaska Airlines, Inc., 898 F.2d 1393, 1397 (9th Cir.1990) (alteration in original) (quoting Univ. of Tex. v. Camenisch, 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981)) (internal quotation marks omitted); see also Fed.R.Civ.P. 65(a)(2). No such notice occurred here, nor is there any indication that the parties requested or favored consolidation. In fact, Defendant Montgomery specifically registered in advance his objection to “the hearing being turned into a hearing on a permanent injunction under Rule 65,” citing time pressures that would prevent assembly of necessary data in support of his arguments.
Were the factual record or the district court’s factual findings of pertinence to our decision, we would be troubled by the procedure followed. But neither party has challenged the district court’s approach. And because we ultimately agree with the Physicians that this ease is fully controlled by binding precedent, the truncated nature of the record does not matter to our decision. We therefore do not consider this procedural matter further. For the same reason, we do not address whether the district court’s “findings” are supported by the record or discuss the degree of deference owed to the legislative findings recited in the Act.[7]
Second, the district court did not address the Physicians’ standing to bring a challenge on their own behalf and that of their patients. “We nonetheless recognize our independent obligation to examine our own jurisdiction,” Indep. Living Ctr. of S. Cal. v. Shewry, 543 F.3d 1050, 1064 (9th Cir.2008) (internal quotation marks omit *1221 ted), and therefore, as the issue came up at oral argument, briefly address the Physicians’ Article III standing.
To satisfy Article III standing, the Physicians must demonstrate that they suffer concrete injury that is actual or imminent, not conjectural or hypothetical; that there is a causal connection between this injury and the challenged statute; and that the injury will likely be redressed by a favorable decision. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).
In their complaint and accompanying affidavits, the Physicians allege that they have performed and will continue to perform pre-viability abortions on patients at or after twenty weeks gestation, for which they would face criminal penalties should the twenty-week law go into effect. “A physician has standing to challenge an abortion law that poses for him a threat of criminal prosecution.” Diamond v. Charles, 476 U.S. 54, 65, 106 S.Ct. 1697, 90 L.Ed.2d 48 (1986). Whether the Physicians continue to perform pre-viability abortions past twenty weeks and risk prosecution under the statute or desist from performing them to avoid penalties, their liberty is concretely affected. See Planned Parenthood of Idaho, Inc. v. Wasden, 376 F.3d 908, 916-17 (9th Cir.2004). Therefore, the Physicians have alleged a sufficiently concrete injury to challenge the provision banning providers from performing abortions on women whose pregnancies have reached twenty weeks gestation.
The Physicians do not seek relief on the basis of their own right to perform abortions, however, but on the basis of the constitutional right of their patients. Courts ordinarily do not allow third parties to litigate the rights of others. “Since at least Singleton v. Wulff, however, it has been held repeatedly that physicians may acquire jus tertii standing to assert their patients’ due process rights in facial challenges to abortion laws.” Id. at 917 (citing Singleton v. Wulff, 428 U.S. 106, 117-18, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976) (plurality opinion)). Recognizing the confidential nature of the physician-patient relationship and the difficulty for patients of directly vindicating their rights without compromising their privacy, the Supreme Court has entertained both broad facial challenges and pre-enforcement as-applied challenges to abortion laws brought by physicians on behalf of their patients. See, e.g., Stenberg v. Carhart, 530 U.S. 914, 922-23, 120 S.Ct. 2597, 147 L.Ed.2d 743 (2000); Planned Parenthood v. Casey, 505 U.S. 833, 845, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992); City of Akron v. Akron Ctr. for Reprod. Health, 462 U.S. 416, 440 n. 30, 103 S.Ct. 2481, 76 L.Ed.2d 687 (1983), overruled on other grounds by Casey, 505 U.S. at 882, 112 S.Ct. 2791 (plurality opinion); Planned Parenthood of Cent. Mo. v. Danforth, 428 U.S. 52, 62 & n. 2, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976).
There is no dispute that the injury of which the Physicians complain is traceable to the challenged statute. Nor is there any doubt that a favorable decision, enjoining enforcement of the twenty-week law, would redress the injury. As the Physicians who bring this challenge to Section 7 therefore have standing to sue, we may consider the constitutional arguments they raise on behalf of their patients seeking pre-viability abortions at or after twenty weeks gestation. See Wasden, 376 F.3d at 918.
II.
A.
A woman has a constitutional right to choose to terminate her pregnancy before the fetus is viable without undue interference by the state. See Casey, 505 *1222 U.S. at 846, 112 S.Ct. 2791.[8] This right is encompassed within a woman’s right to personal privacy, see Roe, 410 U.S. at 153-54, 93 S.Ct. 705; see also Wasden, 376 F.3d at 921 (recognizing that “[a]dult women have a Fourteenth Amendment right to terminate a pre-viability pregnancy”), and “is a rule of law and a component of liberty we cannot renounce,” Casey, 505 U.S. at 871, 112 S.Ct. 2791 (plurality opinion). At bottom, the right recognized by Roe and reaffirmed by Casey is “the woman’s right to make the ultimate decision.” Id. at 877, 112 S.Ct. 2791 (emphasis added).
A woman’s right to terminate her pregnancy is not, however, absolute. “Roe did not declare an unqualified ‘constitutional right to an abortion.’ ... Rather, the right protects the woman from unduly burdensome interference with her freedom to decide whether to terminate her pregnancy.” Maher v. Roe, 432 U.S. 464, 473-74, 97 S.Ct. 2376, 53 L.Ed.2d 484 (1977) (emphasis added). A woman’s right must be considered against important state interests in “safeguarding health, in maintaining medical standards, and in protecting potential life.” Roe, 410 U.S. at 154, 93 S.Ct. 705.
Under the trimester framework originally established in Roe, those interests could not justify any regulation of abortion during the first trimester of pregnancy. Prior to twelve weeks gestation, the Court held, “the abortion decision and its effectuation must be left to the medical judgment of the pregnant woman’s attending physician.” Id. at 164, 93 S.Ct. 705. During the second trimester, Roe concluded, the state’s interest in the health of the pregnant woman is sufficiently compelling to permit regulation of “the abortion procedure in ways that are reasonably related to maternal health.” Id. The state’s interest in “the potentiality of human life,” however, only becomes compelling at the point of viability; thereafter, Roe held, the state “may, if it chooses, regulate and even proscribe, abortion except where it is necessary, in appropriate medical judgment, for the preservation of the life or health of the mother.” Id. at 164-65, 93 S.Ct. 705.
Casey jettisoned this trimester framework and the strict scrutiny standard applied in Roe, see Casey, 505 U.S. at 871-73, 112 S.Ct. 2791 (plurality opinion), holding that state interests in women’s health and fetal life are present and “substantial” from the outset of pregnancy, id. at 846, 112 S.Ct. 2791 (joint opinion), 876, 112 S.Ct. 2791 (plurality opinion). But Casey reaffirmed — and Gonzales v. Carhart, 550 U.S. 124, 127 S.Ct. 1610, 167 L.Ed.2d 480 (2007), has since reiterated— Roe’s central holding: “Before viability, the State’s interests are not strong enough to support a prohibition of abortion or the imposition of a substantial obstacle to the woman’s effective right to elect the procedure.” Casey, 505 U.S. at 846, 112 S.Ct. 2791; Gonzales, 550 U.S. at 145, 127 S.Ct. 1610. That principle is binding upon us and decides this case.
B.
Defendants contend otherwise, characterizing the viability line first drawn in Roe, reaffirmed in Casey, and recognized again in Gonzales, as dicta rather than *1223 controlling Supreme Court precedent. That characterization is most certainly incorrect.
Roe identified fetal viability as the earliest point in pregnancy when the state’s interest becomes sufficiently compelling to justify not just regulation of the abortion procedure, but proscription of abortion unless necessary to preserve the life or health of the mother. Roe, 410 U.S. at 163-65, 93 S.Ct. 705. Since Roe, the Supreme Court and lower federal courts have repeated over and over again that viability remains the fulcrum of the balance between a pregnant woman’s right to control her body and the state’s interest in preventing her from undergoing an abortion.
Colautti v. Franklin, for example, emphasized: “Viability is the critical point. And [the Court has] recognized no attempt to stretch the point of viability one way or the other.” 439 U.S. 379, 389, 99 S.Ct. 675, 58 L.Ed.2d 596 (1979). City of Akron v. Akron Center for Reproductive Health echoed Roe’s holding that viability marks the point after which the state may proscribe abortion; before then, only regulation is permissible. 462 U.S. at 419-20 & n. 1, 428, 103 S.Ct. 2481. And while Webster v. Reproductive Health Services upheld a law requiring doctors to test for viability from twenty weeks gestational age on, 492 U.S. 490, 519-20, 109 S.Ct. 3040, 106 L.Ed.2d 410 (1989), it did not alter the principle that viability — not gestational age — remains the “critical point,” id. at 529, 109 S.Ct. 3040 (O’Connor, J., concurring).[9]
Although the plurality opinion in Casey abandoned Roe’s trimester framework, 505 U.S. at 873, 112 S.Ct. 2791, the Court yet again affirmed “Roe’s central holding, that viability marks the earliest point at which the State’s interest in fetal life is constitutionally adequate to justify a legislative ban on nontherapeutic abortions,” id. at 860, 112 S.Ct. 2791 (joint opinion) (emphasis added). The plurality opinion explained that the Court was again drawing the line at viability “so that before that time the woman has a right to choose to terminate her pregnancy,” emphasizing that “there is no line other than viability which is more workable.” Id. at 870, 112 S.Ct. 2791 (plurality opinion).
Echoing the joint opinion in Casey, Sten-berg took as the starting point of its analysis the “established prineiple[ ]” that, “before ‘viability ... the woman has a right to choose to terminate her pregnancy.’ ” 530 U.S. at 921, 120 S.Ct. 2597 (quoting Casey, 505 U.S. at 870, 112 S.Ct. 2791 (plurality opinion)) (emphasis added).[10]
Finally, the Supreme Court’s most recent abortion decision, Gonzales, preserved the viability line as the limit on prohibitions of abortion, applying Casey rather than overturning it. Gonzales left in place the earlier rulings that,
*1224 [bjefore viability, a State ‘may not prohibit any woman from making the ultimate decision to terminate her pregnancy.’ It also may not impose upon this right an undue burden, which exists if a regulation’s ‘purpose or effect is to place a substantial obstacle in the path of a woman seeking an abortion before the fetus attains viability.’
Gonzales, 550 U.S. at 146, 156, 127 S.Ct. 1610 (emphasis added) (citation omitted) (quoting Casey, 505 U.S. at 878-79, 112 S.Ct. 2791 (plurality opinion)). From those premises, Gonzales went on to consider the constitutionality of the Partial-Birth Abortion Ban Act of 2003, 18 U.S.C. § 1531, framing the question before it as “whether the Act, measured by its text in this facial attack, imposes a substantial obstacle to late-term, but previability, abortions.” Id. at 156, 127 S.Ct. 1610.
This court, similarly, has reaffirmed and applied the viability line in abortion cases. In Guam Society of Obstetricians & Gynecologists v. Ada, 962 F.2d 1366 (9th Cir.1992), we acknowledged that the core of Roe, including its holding that the state may not proscribe abortion before fetal viability, survived Webster. See id. at 1372-74. Because the challenged statute at issue in Guam criminalized abortions prior, to viability, we held it unconstitutional. Id. Both Wasden and McCormack v. Hiedeman, 694 F.3d 1004 (9th Cir.2012), took as their starting points a woman’s “Fourteenth Amendment right to terminate a pre-viability pregnancy.” Wasden, 376 F.3d at 921; accord McCormack, 694 F.3d at 1015, 1018 (enjoining enforcement of a statute that imposed a substantial obstacle to abortion of a nonviable fetus).[11]
Other federal courts have also emphasized the importance of the viability line when evaluating the constitutionality of state abortion laws. For example, the Tenth Circuit struck down a ban on abortions after twenty weeks gestation because, by irrebuttably presuming viability at twenty weeks, the law prohibited the abortion of fetuses that may not be viable. See Jane L. v. Bangerter, 102 F.3d 1112, 1115-18 (10th Cir.1996). The Sixth Circuit determined a state abortion law unconstitutional because it prohibited several of the most common pre-viability abortion methods, effectively precluding women from terminating their pregnancies before fetal viability. See Northland Family Planning Clinic, Inc. v. Cox, 487 F.3d 323, 337 (6th Cir.2007).
As Roe and its many progeny make clear, viability, although not a fixed point, is the critical point. The Supreme Court has recognized that viability varies among pregnancies and that improvements in medical technology will both push later in pregnancy the point at which abortion is safer than childbirth and advance earlier in gestation the point of fetal viability. See Casey, 505 U.S. at 860, 112 S.Ct. 2791. Indeed, such trends led Justice O’Connor to remark, prior to Casey, that “the Roe framework ... is on a collision course with itself.” Akron, 462 U.S. at 458, 103 S.Ct. 2481 (O’Connor, J., dissenting). But while “time has overtaken some of Roe’s factual assumptions,” prompting the abandonment of the trimester framework, “no changes of fact have rendered viability more or less appropriate as the point at which the balance of interests tips.” Casey, 505 U.S. at 860-61, 112 S.Ct. 2791. Evolving medical *1225 realities have not eroded Roe’s central legal holding—that “viability marks the earliest point at which the State’s interest in fetal life is constitutionally adequate to justify a legislative ban on nontherapeutic abortions.” Id. at 860, 112 S.Ct. 2791. Casey could not have been clearer when it stated:
The soundness or unsoundness of that constitutional judgment in no sense turns on whether viability occurs at approximately 28 weeks, as was usual at the time of Roe, at 23 to 24 weeks, as it sometimes does today, or at some moment even slightly earlier in pregnancy, as it may if fetal respiratory capacity can somehow be enhanced in the future. Whenever it may occur, the attainment of viability may continue to serve as the critical fact, just as it has done since Roe was decided.
Id. (emphasis added).
While viability is a “flexible” point, see Danforth, 428 U.S. at 61, 96 S.Ct. 2831, it is medically determinable, id. at 64-65, 96 S.Ct. 2831. Precisely because viability varies from pregnancy to pregnancy, the Supreme Court has held repeatedly that “the determination of whether a particular fetus is viable is, and must be, a matter for the judgment of the responsible attending physician.” Colautti, 439 U.S. at 396, 99 S.Ct. 675 (citing Danforth, 428 U.S. at 64, 96 S.Ct. 2831). That is why a state may not fix viability at a specific point in pregnancy. See Colautti 439 U.S. at 388-89, 99 S.Ct. 675; Danforth, 428 U.S. at 64-65, 96 S.Ct. 2831. “[N]either the legislature nor the courts may proclaim one of the elements entering into the ascertainment of viability—be it weeks of gestation or fetal weight or any other single factor—as the determinant of when the State has a compelling interest in the life or health of the fetus.” Colautti 439 U.S. at 388-89, 99 S.Ct. 675; see also McCormack, 694 F.3d at 1014 n. 5.
The parties here agree that no fetus is viable at twenty weeks gestational age. The district court so recognized, declaring it undisputed that viability usually occurs between twenty-three and twenty-four weeks gestation. Accordingly, Arizona’s ban on abortion from twenty weeks necessarily prohibits pre-viability abortions. Section 7 is therefore, without more, invalid.
III.
A.
The district court justified its contrary conclusion by characterizing the challenged Arizona law as a regulation, rather than a prohibition, of pre-viability abortions. The court then reasoned that the statute does not impose an “undue burden,” under the standard enunciated in Casey for determining the validity of rules regarding the manner in which pre-viability abortions are to be provided. Casey specified that a law imposes an undue burden on a woman’s right to choose to terminate her pregnancy if it “has the purpose or effect of placing a substantial obstacle in the path of a woman seeking an abortion of a nonviable fetus.” Casey, 505 U.S. at 877, 112 S.Ct. 2791 (plurality opinion) (emphasis added); see also Gonzales, 550 U.S. at 156, 127 S.Ct. 1610. Where it does so, the “power of the State reachfes] into the heart of the liberty protected by the Due Process Clause.” Casey, 505 U.S. at 874, 112 S.Ct. 2791 (plurality opinion). But this “undue burden”/“substantial obstacle” mode of analysis has no place where, as here, the state is forbidding certain women from choosing pre-viability abortions rather than specifying the conditions under which such abortions are to be allowed.
Arizona’s twenty-week law deprives women of the right to choose abortion at all after twenty weeks gestation. Given *1226 inaccuracies in calculating actual gestational age, the period between twenty weeks from the first day of a woman’s last menstrual cycle and the point of fetal viability may be a month or more. See Amicus Brief of the Am. Coll, of Obstetricians & Gynecologists & Am. Cong, of Obstetricians & Gynecologists in Support of Plaintiffs-Appellants and Reversal at 4 n.4, Isaacson v. Horne, No. 12-16670 (9th Cir. Sept. 13, 2012) (“ACOG Amicus Brief’). There is therefore no doubt that the twenty-week law operates as a ban on pre-viability abortion and that it cannot stand under the viability rule enunciated repeatedly by the Supreme Court, this circuit, and other circuits: “Before viability, a State may not prohibit any woman from making the ultimate decision to terminate her pregnancy.” Gonzales, 550 U.S. at 146, 127 S.Ct. 1610 (internal quotation marks omitted); accord Casey, 505 U.S. at 846, 112 S.Ct. 2791.
Defendants and the district court rely most heavily on Gonzales for their contrary characterization of the Arizona law. But unlike the statute at issue in Gonzales, Section 7 does not just restrict a woman’s right to choose a particular method of terminating her pregnancy before viability; it eliminates a woman’s “right to choose abortion itself.” Stenberg, 530 U.S. at 930, 120 S.Ct. 2597. Even though the fetus is not yet viable at twenty weeks, only a physician can elect to perform an abortion from that point, and only in the case of a medical emergency as narrowly defined under the Arizona statute. During the period between the twenty-week mark and viability, the pregnant woman “lacks all choice in the matter” of whether to carry her pregnancy to term. Casey, 505 U.S. at 850, 112 S.Ct. 2791. Under the Supreme Court’s consistent holdings, that distinction makes all the difference to the validity of the Arizona statute.
This consequence — the elimination of a woman’s choice as to post-twenty-week, pre-viability abortions — is not merely collateral to the Arizona law’s purpose. Section 7 does not have only the “incidental effect of making it more difficult or more expensive to procure an abortion.” Id. at 874, 112 S.Ct. 2791 (plurality opinion). Nor does it merely “create a structural mechanism by which the State, or the parent or guardian of a minor, may express profound respect for the life of the unborn.” Id. at 877, 112 S.Ct. 2791. Instead, the stated purpose of H.B.2036 is to “[pjrohibit” a woman from electing abortion once the fetus reaches twenty weeks gestational age. H.B.2036, sec. 9(B)(1). Given that Arizona law already forbids posi-viability abortions, see Ariz.Rev.Stat. § 36-2301.01, the principal effect, and, necessarily, the primary intent, of the challenged statute is to prohibit pre-viability abortions at and after twenty weeks.
B.
The district court nonetheless — again, erroneously, given the binding precedent we have surveyed — applied not the bright-line rule that the state may not proscribe abortion before viability, but instead the “undue burden” standard elaborated in Casey for quite different sorts of statutes. None of the factors on which the court rested its undue burden analysis — the continued availability of abortion prior to twenty weeks, the medical emergency exception in H.B.2036, the rarity of abortion after twenty weeks, or the state’s asserted interests in the law — can save a pre-viability ban, such as Arizona’s twenty-week law, from constitutional infirmity.
1.
First, the district court held that, because a woman can obtain a pre-viability abortion prior to twenty weeks, the chai- *1227 lenged law does not deprive her of the “ultimate decision” to terminate her pregnancy, but merely places a “time limitation” on that choice. The availability of abortions earlier in pregnancy does not, however, alter the nature of the burden that Section 7 imposes on a woman once her pregnancy is at or after twenty weeks but prior to viability. And a prohibition on abortion at and after twenty weeks does not merely “encourage” women to make a decision regarding abortion earlier than Supreme Court cases require; it forces them to do so.
Under the twenty-week law, a woman who seeks to terminate her pregnancy must do so before twenty weeks gestational age or forfeit her right to choose whether to carry her pregnancy to term. The Supreme Court has expressly rejected such attempts to “stretch the point of viability” earlier in pregnancy, or to peg it to a precise gestational date. See Colautti 439 U.S. at 389, 99 S.Ct. 675; Danforth, 428 U.S. at 64, 96 S.Ct. 2831. Under controlling Supreme Court precedent, a woman has a right to choose to terminate her pregnancy at any point before viability — not just before twenty weeks gestational age — and the State may not proscribe that choice.
2.
Second, the district court misconstrued the significance of the statute’s medical emergency exception. Because Section 7 incorporates an exception for medical emergencies, the district court concluded that it merely limits, rather than prohibits, pre-viability abortions from twenty weeks on. But the law’s emergency exception does not transform it from a ban into a limitation as to the mode or manner of conducting abortions. Again, Casey is crystal clear on this point: “Regardless of whether exceptions are made for particular circumstances, a State may not prohibit any woman from making the ultimate decision to terminate her pregnancy before viability.” 505 U.S. at 879, 112 S.Ct. 2791 (plurality opinion) (emphasis added). As Casey instructs, even with a medical emergency exception, a proscription on a woman’s choice to undergo an abortion remains invalid. Id. By permitting abortions from twenty weeks to viability only at the decision of a medical professional as to an immediate medical necessity, Section 7 prohibits women from electing to terminate their pregnancies prior to fetal viability. See id. at 846, 112 S.Ct. 2791 (joint opinion).
Moreover, to be constitutional, even laws that proscribe post-viability abortions, such as Arizona Revised Statutes § 36-2301.01, must contain a health exception. See Roe, 410 U.S. at 164-65, 93 S.Ct. 705; Stenberg, 530 U.S. at 930, 120 S.Ct. 2597. “An adequate health exception ... is a per se constitutional requirement.... To preclude a woman from receiving a medically necessary abortion is to impose an unconstitutional burden.” Wasden, 376 F.3d at 922-23. As Casey put it, “the essential holding of Roe forbids a State to interfere with a woman’s choice to undergo an abortion procedure if continuing her pregnancy would constitute a threat to her health.” 505 U.S. at 880, 112 S.Ct. 2791. Accordingly, the absence of an adequate medical exception may make an otherwise permissible prohibition on post-viability abortion unconstitutional. See, e.g., Stenberg, 530 U.S. at 930, 120 S.Ct. 2597. But the converse is not true: The presence of a medical exception does not make an otherwise impermissible prohibition constitutional. The adequacy of the medical exception has no bearing on whether the prohibition is permissible in the first place. The twenty-week law is unconstitutional because it bans abortion at a pre-viability stage of *1228 pregnancy; no health exception, no matter how broad, could save it.[12]
Because the medical emergency exception will not cover all women who seek pre-viability abortions at or after twenty weeks, the challenged provision continues to operate as a complete bar to the rights of some women to choose to terminate their pregnancies before the fetus is viable. Significantly, the emergency exception does not authorize abortions in cases of fetal anomaly or pregnancy failure, which do not pose an immediate threat to the woman’s health. See Ariz.Rev.Stat. § 36-2151(6).
In sum, while a health exception is necessary to save an otherwise constitutional post-viability abortion ban from challenge, it cannot save an unconstitutional prohibition on the exercise of a woman’s right to choose to terminate her pregnancy before viability.
3.
Nor does the district court’s observation that pre-viability abortions at and after twenty weeks are relatively rare have any relevance to the law’s constitutional validity. A prohibition’s constitutionality is measured by its impact on those whom it affects, not by the number of people affected. Casey is lucid on this point as well: “The analysis does not end with the one percent of women upon whom the statute operates; it begins there.... The proper focus of constitutional inquiry is the group for whom the law is a restriction, not the group for whom the law is irrelevant.” 505 U.S. at 894, 112 S.Ct. 2791.
4.
To the litany of justifications given by the district court for failing to follow the Supreme Court’s clear rule that no woman may be entirely precluded from choosing to terminate her pregnancy at any time prior- to viability, Defendants add one more: They argue that, the twenty-week law “might be constitutional based solely on the state’s compelling interest in maternal health.” Current medical knowledge, Defendants contend, indicates “abortion by 20 weeks has higher rates of mortality and health complications for the mother than carrying the unborn child to term.” Consequently, they reason, the state may proscribe abortions from twenty weeks because “there is no right to unsafe abortion” (emphasis added).
Once more, this suggestion runs squarely up against Roe and its progeny, including Casey. Recognizing an important state interest in maternal health, Roe held that “a State may regulate the abortion procedure to the extent that the regulation reasonably relates to the preservation and protection of maternal health.” 410 U.S. at 163, 93 S.Ct. 705 (emphasis added). Toward this end, the Supreme Court has repeatedly countenanced informed consent requirements directed at protecting the health of pregnant women without precluding a woman’s ability to balance the risk to her own health, once known, against other considerations.[13] See, e.g., Casey, 505 U.S. *1229 at 881-84, 112 S.Ct. 2791 (plurality opinion); Danforth, 428 U.S. at 67, 96 S.Ct. 2831. Casey, for example, upheld a requirement that doctors inform their patients of the consequences of abortion to their own health (as well as to the fetus). See 505 U.S. at 882-83, 112 S.Ct. 2791 (plurality opinion). Just as for other medical procedures that carry risks of morbidity or mortality, the requirement upheld in Casey left women to decide, in consultation with their medical providers, whether they wish to undertake known risks.[14] Under the challenged Arizona law, however, if a pregnant woman is at or after twenty weeks gestation, she no longer can decide whether she is willing to undertake the risks to her own health posed by abortion; the State has made that choice for her.
Defendants correctly point out that the existence of medical or scientific uncertainty regarding either the safety of abortion after twenty weeks gestational age or fetal capacity to feel pain does not preclude the Arizona legislature from setting standards for the manner and means through which abortions are to be provided. See Gonzales, 550 U.S. at 163-64, 127 S.Ct. 1610. Such uncertainty “does not foreclose the exercise of legislative power in the abortion context any more than it does in other contexts.” Id. at 164, 127 S.Ct. 1610. But neither does it expand legislative power beyond constitutional bounds.
The short of the matter is that, because Arizona’s twenty-week law acts as a prohibition of, and not merely a limitation on the manner and means of, pre-viability abortions, under long-established Supreme Court law no state interest is strong enough to support it. See Casey, 505 U.S. at 846, 112 S.Ct. 2791. Section 7 effectively shifts from viability to twenty weeks gestation the point at which the state’s asserted interests override a woman’s right to choose whether to carry a pregnancy to term. Supreme Court precedent does not countenance such a shift.
IV.
Finally, we turn to a question to which the district court devoted considerable attention but which we conclude ultimately has no bearing on the outcome of the legal issue before us: whether the Physicians’ suit is properly construed as a facial or as-applied challenge to the Arizona statute.
The Physicians maintain that they challenge the twenty-week law only as it applies to pre-viability abortions at or after twenty weeks gestation; they do not allege Section 7 is unconstitutional as applied to later-term abortions of viable fe *1230 tuses, which none of the Physicians performs. Described in this fashion, the complaint appears to be “a paradigmatic as-applied attack [that] challenges only one of the rules in a statute, a subset of the statute’s applications, or the application of the statute to a specific factual circumstance.” Hoye v. City of Oakland, 653 F.3d 835, 857 (9th Cir.2011).[15] But as the district court observed, the twenty-week law only has practical significance under Arizona law until viability, because Arizona separately bans post-viability abortion under § 36-2301.01. This lawsuit is not challenging the independent ban on post-viability abortions, and so, realistically, challenges Section 7 on its face — that is, in all the situations in which it would actually be determinative.
The precise characterization of the Physicians’ complaint, however, has little bearing on the resolution of the legal question before us. “[T]he distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case involving a constitutional challenge.” Citizens United v. Fed. Election Comm’n, 558 U.S. 310, 331, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010). Instead, the distinction matters primarily as to the remedy appropriate if a constitutional violation is found. Id. The substantive legal tests used in facial and as-applied challenges are “invariant,” Hoye, 653 F.3d at 857, and so our question remains whether the statute deprives a woman of the right to choose to terminate her pregnancy before viability. That it does so in all cases, or only in some cases to which it applies, may affect the breadth of the relief to which plaintiffs are entitled, but not our jurisdiction to entertain the suit or the constitutional standard we apply.
The posture of the challenge also can bear on the showing that plaintiffs must make to prevail. “Facial and as-applied challenges differ in the extent to which the invalidity of a statute need be demonstrated.” Legal Aid Servs. of Or. v. Legal Servs. Corp., 608 F.3d 1084, 1096 (9th Cir.2010) (citation and internal quotation marks omitted). Here, however, there is no practical difference between the two approaches.
As we have discussed, given the controlling, substantive legal standards, Section 7 is invalid as applied to every woman affected by its prohibition on abortions. In other words, there is a one hundred percent correlation between those whom the statute affects and its constitutional invalidity as applied to them. That universal correlation is sufficient to require declaring the statute entirely invalid, even under the strict standard enunciated in United States v. Salerno, 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987), and applicable except in First Amendment and abortion cases, as there is “no set of circumstances” to which the statute applies under which it would be valid. Id. at 745, 107 S.Ct. 2095. And, given the one hundred percent correlation, there is no doubt the special rule that applies to facial challenges in abortion *1231 cases — that plaintiffs need only show the law challenged is invalid “in a large fraction of the cases in which [the statute] is relevant,” Casey, 505 U.S. at 895, 112 S.Ct. 2791 — is also met. See also Lawall, 180 F.3d at 1027.
In contrast, the facial versus as-applied distinction is relevant when a claimed statutory defect applies to a subcategory of the people affected by the law, and the court must determine whether that particular sub-category may challenge the statute as a whole, including its application to people who are not similarly situated. Here, because of the one hundred percent correlation, that usual concern with invalidating an abortion statute on its face — that the injunctive relief goes beyond the circumstances in which the statute is invalid to include situations in which it may not be — does not arise.
In Gonzales, for example, the Court considered whether the impact of the Partial-Birth Abortion Ban Act on people for whom the banned abortion method may be medically necessary was grounds to hold not only that the ban was unconstitutional as applied to those individuals, but that it was entirely unconstitutional and could not be applied at all because it lacked a medical exception. See Gonzales, 550 U.S. at 161-63, 127 S.Ct. 1610. The Court concluded that an as-applied challenge was the proper vehicle through which to seek relief for the very small subgroup of affected women as to whom the absence of a medical exception might render the statute invalid. See id. at 167-68, 127 S.Ct. 1610. Here, however, the substantive constitutional law renders the twenty-week law invalid as to every woman who would choose to have an abortion but is precluded from doing so by Section 7.
The Physicians are therefore entitled to the relief they seek, enjoining the ehal-lenged provision of Section 7 in its entirety.
Conclusion
Under controlling Supreme Court precedent, Arizona may not deprive a woman of the choice to terminate her pregnancy at any point prior to viability. Section 7 effects such a deprivation, by prohibiting abortion from twenty weeks gestational age through fetal viability. The twenty-week law is therefore unconstitutional under an unbroken stream of Supreme Court authority, beginning with Roe and ending with Gonzales. Arizona simply cannot proscribe a woman from choosing to obtain an abortion before the fetus is viable.
We therefore REVERSE the district court’s denial of declaratory and injunctive relief.

. Section 7 of H.B.2036 encompasses provisions to be codified at Arizona Revised Statutes § 36-2158 and § 36-2159. As this lawsuit challenges only the provision to be codified at § 36-2159, all references to Section 7 in this opinion denote only the challenged portion thereof.

. "Gestational age,” as used by the Arizona legislature and throughout this opinion, refers to the age of a fetus calculated from the first day of the pregnant woman’s last menstrual period. See Ariz.Rev.Stat. § 36-2151(4).

. As used throughout this opinion, "viability” refers to "the time at which there is a realistic possibility of maintaining and nourishing a life outside the womb.” Planned Parenthood v. Casey, 505 U.S. 833, 870, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992) (citing Roe, 410 U.S. at 163, 93 S.Ct. 705).

.The parties to this suit agree that no fetus is viable at twenty weeks gestational age and that a healthy fetus typically attains viability at twenty-three or twenty-four weeks, at the earliest.

. Because Defendant LaWall neither opposed the Physicians’ motion for a preliminary injunction nor argued in favor of Section 7 before this court, references in this opinion to Defendants' arguments refer only to the State Defendants and/or to Defendant Montgomery.

. As noted supra, prior to the adoption of H.B.2036, Arizona law already prohibited post-viability abortions. See Ariz.Rev.Stat. § 36-2301.01(A)-(B) ("A physician shall not knowingly perform an abortion of a viable fetus unless ... [t]he physician states in writing before the abortion is performed that the abortion is necessary to preserve the life or health of the woman, specifying the medical indications for and the probable health consequences of the abortion.... This section does not apply if there is a medical emergency.”).

. We note, however, that the sort of “legislative facts” addressed by the parties and by the district court are often considered by appellate courts from publicly available primary sources even if not developed in the record. See, e.g., McCormack v. Hiedeman, 694 F.3d 1004, 1016-18 & nn. 8-9, 1022 n. 12 (9th Cir.2012) (citing medical studies regarding the health effects of abortion and statistics on the availability and performance of abortions in Idaho and nationally); Roe, 410 U.S. at 149 n. 44, 93 S.Ct. 705 (citing medical research regarding morbidity and mortality rates for abortions and childbirth); Gonzales v. Carhart, 550 U.S. 124, 173 n. 3, 127 S.Ct. 1610, 167 L.Ed.2d 480 (2007) (Ginsburg, J„ dissenting) (citing numerous medical articles regarding obstacles to abortion and associated risks); see also Allison Orr Larsen, Confronting Supreme Court Fact Finding, 98 Va. L. Rev. 1255, 1262 (2012) (presenting research documenting “over one hundred examples of Supreme Court opinions from the last fifteen years that make assertions of legislative fact supported by an authority never mentioned in any of the briefs”).

. The three-Justice lead opinion in Casey is in some sections the opinion of the Court and in other sections a limiting concurrence. Although Part IV of the opinion, enunciating the undue burden test, was endorsed by only three Justices, as the narrowest ground for the Court’s holding it is as binding on this court as would be a majority opinion. See Wasden, 376 F.3d at 921 n. 11 (citing Marks v. United States, 430 U.S. 188, 193, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977); Planned Parenthood of Wis. v. Doyle, 162 F.3d 463, 473 (7th Cir.1998)). Unless otherwise specified, all references to Casey are to the parts of the joint opinion representing the opinion of the Court.

. The central difference between the Arizona statute here challenged and the Missouri statute at issue in Webster is that the Arizona law not only requires testing of gestational age prior to the performance of an abortion, but also predicates the permissibility of an abortion on gestational age. The statute at issue in Webster required doctors to perform tests necessary to determine gestational age, but it predicated the permissibility of abortion on the physician’s assessment of fetal viability, not gestational age. See Webster, 492 U.S. at 500-01, 109 S.Ct. 3040.

. Although the Court in Stenberg quoted from the plurality opinion in Part IV of Casey, the same principle is enunciated in Part I of the joint opinion, which is the opinion of the Court: “Before viability, the State’s interests are not strong enough to support a prohibition of abortion or the imposition of a substantial obstacle to the woman’s effective right to elect the procedure.” Casey, 505 U.S. at 846, 112 S.Ct. 2791.

. In addition to the enjoined statute, the plaintiff in McCormack also challenged another Idaho law, the Pain-Capable Unborn Child Protection Act ("the PUCPA”). Like the Arizona statute at issue here, the PUCPA bans abortions from twenty weeks gestational age. See McCormack, 694 F.3d at 1009; Idaho Code §§ 18-505-18-507. We did not reach the constitutionality of the ban, however, because the plaintiff lacked standing to challenge it. McCormack, 694 F.3d at 1024-25.

. The Physicians note that the language of the medical exception in the Arizona law, see Ariz.Rev.Stat. § 36-2151(6), parallels that upheld in Casey, where the concern was delay, not prohibition, of abortions, under a 24-hour waiting period and informed consent provision. See Casey, 505 U.S. at 879-81, 112 S.Ct. 2791; id. at 885-87, 112 S.Ct. 2791 (plurality opinion). The focus on “immediate” danger in the current context, the Physicians contend, could require doctors to postpone abortions until medical risks pose an imminent threat to a pregnant woman's health, when the possibility of medical complications from abortion may be greater. Defendants dispute this understanding of the scope of the medical exception. As it is not relevant to our conclusion, we do not settle this disagreement concerning the precise implications of the statute's medical exception.

. The Physicians and amici curiae writing on their behalf contend that medical evidence *1229 supports neither Defendants' assertions regarding the relative risks of abortion nor Defendants' claims concerning fetal capacity to experience pain from twenty weeks gestation. See, e.g., ACOG Amicus Brief at 14-15 & nn. 13-14 (arguing that abortion is safer than childbirth and that the Arizona legislature’s findings address medical risks associated with abortion, not the relative risks of those procedures compared to childbirth); see also McCormack, 694 F.3d at 1016 n. 8 (noting that numerous studies denounce any link between abortion and the pregnant woman's later mental health). Again, we do not consider which medical experts have the better of the disputes over the underlying medical facts regarding either the pregnant woman or the fetus, as our decision rests on binding legal principles.

. Notably, the Arizona Supreme Court has emphasized that, in the context of informed consent, "the decision to undergo an operation belongs to the patient.” Hales v. Pittman, 118 Ariz. 305, 314, 576 P.2d 493 (1978). A more recent case, Simat Corp. v. Arizona Health Care Cost Containment System, recognized that the privacy clause of the Arizona Constitution guarantees Arizonans the right "to care for their health and to choose or refuse the treatment they deem best for themselves.” 203 Ariz. 454, 458 n. 2, 56 P.3d 28 (2002) (citing Rasmussen v. Fleming, 154 Ariz. 207, 215, 741 P.2d 674 (1987)).

. That the statute has not yet been applied to any of the plaintiffs does not preclude them from bringing a pre-enforcement, as-applied challenge. Many such challenges have been entertained in the past. See, e.g., Casey, 505 U.S. at 845, 112 S.Ct. 2791; Wasden, 376 F.3d at 914; Planned Parenthood of S. Ariz. v. Lawall, 180 F.3d 1022, 1024-27 (9th Cir.1999) (applying Casey's "undue burden standard” in evaluating a facial challenge to an abortion regulation). Nor do the plaintiffs have an obligation, as the district court implied, to argue that the statute would be constitutional under some set of facts, but was “only unconstitutional as-applied to Plaintiffs.” If they can show that it is unconstitutional as to the patients on whose behalf they sue, then plaintiffs have met their burden for an as-applied challenge.