The Supreme Court's prohibition on a State's selecting a specific fetal age where abortion could be prohibited has been enforced in many cases, including the Little Rock case. A 20-week limit has been struck down in several. Bryant v. Woodall, 363 F.Supp.3d 611 (M.D.N.Car. 2019) (appealed 6/26/2019); McCormack v. Herzog, 788 F.3d 1017 (9th Cir. 2015) (Idaho statute); Isaacson v. Horne, 716 F.3d 1213 (9th Cir. 2013) (Arizona statute); Jane L. v. Bangerter, 809 F.Supp. 865 (D. Utah. 1992) (appealed on other issues).
It is thus highly likely that the listed weekly time limits on abortions will be ruled invalid in the final judgment in this case.
III. Preliminary Injunction Evaluation Issues.
In addition to evaluating likelihood of success in obtaining a permanent injunction, I must consider the threat of irreparable harm to plaintiffs and patients if the challenged provisions of House Bill 126 go into effect this week, the balance of harm to the parties if preliminary relief is granted, and the public interest. Dataphase Sys. Inc. v. C L Sys. Inc., 640 F.2d 109, 114 (8th Cir. 1981). I need also consider whether preservation of the status quo would be served by granting interim relief.
Enjoining new legislation pending litigation and before the effective date seems to be a method of preserving the status quo during the pendency of the lawsuit. Association of Equipment Manufacturers v. Burgum, 2017 WL 8791104 (D.N.Dak.). While federal courts should generally be very cautious before delaying the effect of State laws, the sense of caution may be mitigated when the legislation seems designed, as here, as a protest against Supreme Court decisions.
The hostility to, and refusal to comply with, the Supreme Court's abortion jurisprudence is most obviously demonstrated in the attempt to push "viability" protection downward in various weekly stages to 8 weeks LMP. This is contrary to repeated, clear language of the Court. The anti-discrimination section seeks to create novel exceptions to some plain but general language. That is a less questionable legislative practice. It does seem so likely wrong, however, that it should not be permitted to go into operation, unless the relief sought offers minimal demonstrable *638 practical benefit - or, in other words, the denial of immediate relief is not demonstrably harmful.
The greatest impact of House Bill 126 would be to prohibit abortions in Missouri after 8 weeks LMP. This would prohibit more than two thirds of plaintiff RHS's patients from obtaining abortions and about half the reported abortions in Missouri. McNicholas Decl. ¶ 52. Crumbliss Decl. ¶ 14. Docs. 3 & 35. The impact of the 20-week rule seems likely to prohibit about 100 abortions performed each year. McNicholas Decl. § 52. I classify that as a significant interference with plaintiffs' service and the rights of its prospective patients, so it should be considered quite adequate as harm to justify immediate relief from the defective provisions of House Bill 126. The least impact would result from prohibiting the sex or race reasons for an abortion, the occurrence of which is unknown to the Chief Medical Officer of RHS. McNicholas Decl. § 59. An abortion before viability motivated by a Down Syndrome test would also be somewhat rare, given the window of time needed for adequate testing and consultation. Bebbington Decl. §§ 9, 22-24, 43. And we do not know the frequency of those abortions in Missouri, where the testing rate might be greater or below testing elsewhere.
There is an absence of any information from RHS that would allow me to assess whether, if final judgment is possible in several months, the inability to schedule "Down syndrome abortions" would be likely to interfere with the abortion rights of real-life women. I asked counsel early in the morning of argument, "Why is there neither a disclaimer nor an estimate of 'Down Syndrome abortions' at RHS?" This issue remains entirely speculative after argument, perhaps because no estimate is possible, since Down Syndrome is rarely mentioned by patients. If so, there could be no sanctions, since the law requires knowledge before a provider is in violation.[6] Caution suggests I withhold a preliminary injunction against the anti-discrimination section, but remain open to an adequately supported renewed motion on this narrow issue.[7]
In plaintiffs' reply brief (Doc. 47) they candidly change the emphasis to perceived harm that compliance might cause RHS and its officials and medical personnel. They suggest criminal penalties or loss of licenses. Prosecutions seem even more speculative or unlikely than the possible loss of an abortion opportunity during the next several months by some pregnant woman and her family. The St. Louis Circuit Attorney, a named defendant, does not oppose plaintiffs' request for a preliminary injunction. Doc. 42, noted in Doc. 47, p. 1. License controversies on this subject also seem entirely unlikely. Both this court and the State Courts are open to RHS or any *639 other target of a license cancellation. Unlike many individuals who seek abortions, legal assistance seems available, and the views expressed here should reduce the likelihood of harassment issues concerning the anti-discrimination section.
The public interest in this case at this time seems dominated by the analysis of which party is likely to prevail, which overwhelmingly favors plaintiffs, and seems unlikely to change dramatically in the next several months; that is, before final judgment can be entered.[8] A preliminary injunction in favor of plaintiffs is appropriate here, except as to § 188.038, the anti-discrimination section.
IV. Severability and Conditions
The Missouri General Assembly has made clear that it wishes to preserve as much of House Bill 126 as can be saved under current law. The various sections specifying prohibitions on abortions at various weeks prior to viability cannot be allowed to go into effect on August 28, as scheduled. The existing prohibition against abortion of viable fetuses remains in effect, and is not challenged, so a preliminary injunction leaves Missouri with a public policy against abortions to the extent permitted by Constitutional law.
The statutory prohibition of discriminatory or selective abortions is unqualified, thus applying to both viable and non-viable fetuses. If it were possible to sever the language to limit the coverage to viable fetuses I would do so, but that cannot be done without judicial re-writing of the section, a practice to be avoided when possible. The desired result could be achieved, however, by using an as applied rather than a comprehensive injunction. A full facial challenge is not appropriate here because RHS limits its practice to non-viable fetus abortions (21 weeks, 6 days, LMP).
As is customary in cases of this nature, and consistently with Rule 65 (c), Fed. R. Civ. Proc., no bond will be required from plaintiffs in this case. Little Rock Family Planning Services, supra, 2019 WL 3679623, at * 90.
*640 It is therefore ORDERED that the Missouri official defendants, their employees, agents, and successors in office are hereby PROHIBITED, pending litigation or further order of the court, from enforcing certain pre-viability bans on abortions, pursuant to H.B. 126; specifically, Mo. Rev. Stat. §§ 188.056, 188.057, 188.058, 188.375. The motion for preliminary injunction is DENIED without prejudice as to § 188.038.
Jurisdiction is retained to modify this order pending litigation, on motion or to make certain corrections.

Plaintiffs complain that this provision will, if ultimately validated by the courts, cause them to engage in inappropriate, intrusive discussions with women seeking abortions. But one can imagine that if there is a legally validated prohibition, providers would protect themselves by adding to medical paperwork a question such as "Is this procedure being sought because of race, sex or Down syndrome ?" One would guess this would lead to the effective discontinuance of "Down syndrome abortions" at RHS. Until there is finality on the legal issue, which currently tilts in favor of plaintiffs, one might suppose fewer questions would be asked, since they are not required, and that the status quo could be preserved without court order. At least this may be true for the next several months, which would diminish the likelihood of harm from denial of a preliminary injunction. If my supposition is mistaken, a further motion can be filed.

The related issue of ripeness will apparently be the subject of further briefing. Doc. 33, p 12.

The apparent absence of material facts that are in dispute suggests that summary judgment may be the most expeditious way to advance this case toward an appeal.
In offering this procedural suggestion I am aware that the Missouri brief proposes slowing the case for development and consideration of a factual record, advising that last Monday it submitted extensive newly developed evidence. Doc. 35. Missouri has offered material for the record (and perhaps appellate or Supreme Court consideration) regarding the "discrimination" issues. There is also a good deal of material relating to fetus development and other issues outlined in Doc. 31. But the two basic issues regarding (1) restricting reasons for exercising abortion rights before viability and (2) banning abortions at various weekly stages before viability seemingly present pure legal questions. Both prohibitions very likely conflict with current abortion jurisprudence. Because I was the district judge in the Hawley case, supra, and because the Missouri defendants seek to equate the need for factual development in that case with this one, I note that the "factual issues" here and there are unrelated. Here I express the view, with other judges, that certain Supreme Court legal rulings are binding. In Hawley, on the "factual issues" I was of the view that certain Supreme Court factual rulings on "legislative facts" or "social facts" were binding, and could not be relitigated at the district court. See Doc. 113 in Case 16-4313. For illustration, I quoted Judge Easterbrook that "after a majority of the Supreme Court has concluded that photo ID requirements promote confidence, a single district judge cannot say as a 'fact' that they do not even if 20 political scientists disagree with the Supreme Court." Avoidance of facts here is thus in a different context, that is, whether a legal principle established by the Supreme Court can be rebutted by factual material offered in the lower courts.