SLIP OPINION

Cite as 2015 Ark. App. 27

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CR-14-388

| | |
|---|---|
| MELISSA McCANN-ARMS<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br>APPELLEE | **OPINION DELIVERED** JANUARY 28, 2015<br><br>APPEAL FROM THE POLK COUNTY CIRCUIT COURT<br>[NO. CR-2013-104]<br><br>HONORABLE J.W. LOONEY, JUDGE<br><br>AFFIRMED |

**ROBERT J. GLADWIN, Chief Judge**

Appellant Melissa McCann-Arms appeals her conviction by a Polk County jury on one count of introduction of a controlled substance into the body of another person, pursuant to Arkansas Code Annotated section 5-13-210(b) (Repl. 2013), for which she was sentenced to twenty years' imprisonment in the Arkansas Department of Correction (ADC). Appellant (1) challenges the sufficiency of the evidence to support her conviction; (2) argues that the circuit court erred by denying her motion to dismiss for lack of jurisdiction; and (3) argues that the circuit court erred by denying her motion to dismiss because the controlled substance was injected into appellant and not her child. We affirm.[1]

---

[1]This court initially attempted to certify this appeal to the Arkansas Supreme Court on the basis that the application of the relevant statute to a mother introducing a controlled substance into the body of another person—specifically, her child, through the umbilical cord—by way of ingesting or injecting a controlled substance into herself during the time the child was still attached via the umbilical cord is an issue of first impression. The Arkansas Supreme Court declined to hear the appeal.

SLIP OPINION

*Facts*

Appellant was arrested on August 26, 2013, and charged with two counts of introduction of a controlled substance into the body of another person.[2] Appellant was arraigned on August 28, 2013, and her jury trial was held on January 13, 2014. Appellant was convicted and sentenced to a term of twenty years in the ADC pursuant to a sentencing order entered on January 14, 2014. She filed a timely notice of appeal on February 3, 2014, and this appeal followed.

## I. *Sufficiency of the Evidence*

In reviewing a challenge to the sufficiency of the evidence, an appellate court will determine whether the verdict is supported by substantial evidence. *Williams v. State*, 2011 Ark. App. 675, 386 S.W.3d 609. Substantial evidence can be either direct or circumstantial and is defined as evidence forceful enough to compel a conclusion beyond suspicion or conjecture. *Id*. On appeal, only evidence supporting the verdict will be considered and will be viewed in the light most favorable to the verdict. *Id*. Witness credibility is left to the trier of fact, who resolves questions of conflicting testimony and inconsistent evidence. *Id*. Finally, the jury is free to disregard the defendant's self-serving version of events. *Strong v. State*, 372 Ark. 404, 277 S.W.3d 159 (2008).

Arkansas Code Annotated section 5-13-210(b) provides that a person commits the offense of introduction of a controlled substance into the body of another person when he or she causes a controlled substance to be ingested, inhaled, or otherwise introduced into the

---

[2]Count 1 was subsequently *nolle prossed*.

body of another person. The statute, as currently written, neither contains a definition of the term "person" nor cross-references a definition in any other statute.

Appellant claims that the record is clear that she did not introduce a controlled substance into either her own body or the body of her child while in Polk County, Arkansas. She notes that no evidence was presented of any injection of a controlled substance into the body of her child after it had been born. Although there was no evidence presented of an injection directly into the body of the child before it was born, appellant's brief acknowledges that the child may have absorbed some amount from appellant—through the umbilical cord before it was cut.

Section 5-13-210(b) provides that it "is unlawful for any person to administer or cause to be ingested, inhaled, or otherwise introduced into the human body of another person a controlled substance as defined by the Uniform Controlled Substance Act, sections 5-64-101 to -1303 (Repl. 2005 & Supp. 2013), unless the controlled substance has been ordered for the person receiving the controlled substance by a licensed practitioner . . . for a legitimate medical purpose. ' Viewed in the light most favorable to the verdict, the jury heard the following evidence. On November 1, 2012, appellant, exhibiting symptoms of labor, was brought to Mena Regional Health System (Mena Regional) by ambulance. Amber Williams, R.N., admitted appellant into the hospital. Williams testified that the emergency-medical personnel told her that appellant was acting very erratic and out of control. She explained that when a woman is brought into the hospital to deliver a child, the nursing staff assesses the patient to determine the patient's current stage of labor. Williams testified that it was very difficult to assess appellant because of her thrashing around on the bed and constant

getting in and out of the bed. Williams noted that, as part of the initial assessment, patients are asked if they have taken any drugs and that appellant denied that she had used any drugs. Williams testified that she did not believe appellant's denial of drug use, and because of her concerns about appellant's erratic behavior, she contacted the police before her shift ended.

Stacie Floyd, another registered nurse at Mena Regional, testified that she came into contact with appellant soon after she was admitted into the hospital. Floyd testified that appellant was acting very erratically, thrashing and screaming, which was not consistent with someone in the very early stage of labor, which was the determination of appellant's condition by the nursing staff.

Amber Cobb, former registered nurse at Mena Regional, testified that she assisted in the delivery and that appellant acted abnormally and cried hysterically almost to the point of hyperventilating, which caused the child's heartbeat to drop to an abnormally low level. Cobb described the birth as abnormal because the child did not cry, and even after stimulation, he was flaccid and limp and had a blank stare. Cobb explained that she had not seen that type of blank stare in a newborn child's eyes much in her nursing experience and that he also had an uncommon facial droop on one side of his face. Cobb also testified that while appellant was in labor, Cobb informed appellant that she had tested positive for methamphetamine. Cobb noted that appellant got very angry and upset and told Cobb that this was all Cobb's fault.

Elena Cannon, investigator for the Polk County Prosecuting Attorney's office, testified that she received a phone call from the local police department regarding appellant, and she obtained a search warrant on November 2, 2012, to allow blood and urine samples

to be taken from appellant and her child. Cannon served appellant with the search warrant while she was still in labor and gathered the samples, which were then taken to the Arkansas State Crime Lab (Crime Lab) in Little Rock.

Leanne Hazard, forensic toxicologist for the Crime Lab, performed tests on appellant's and her newborn child's blood, which came back positive for codeine, amphetamine, methamphetamine, norfentanyl, and lidocaine. Don Riddle, also a forensic toxicologist with the Crime Lab, testified that he tested appellant's and her newborn child's blood and urine. Appellant tested positive for methamphetamine in her blood and urine, and her newborn child tested positive for methamphetamine and amphetamine in his urine.

After appellant gave birth, the child was quickly taken to the nursery because his movements were abnormal. Patina Fair, another registered nurse at Mena Regional, testified that she cared for appellant's child while he was in the nursery. Fair said that he was a poor feeder, spit up excessively, required IV hydration for dehydration, had very fast breaths, had a very shrill cry that is not common in normal babies, was very jittery and shaky, and was very hard to console, all of which are signs of withdrawal from a controlled substance. Fair spoke with appellant right before she took the child to the nursery, and appellant admitted to her that she "did this" to her own child. Fair explained to appellant that he was suffering from withdrawal from methamphetamine use.

Michael May, Senior Investigator for the 18th West Judicial District Drug Task Force, testified that he was contacted by Investigator Cannon to assist in the investigation. May and Cannon interviewed appellant at the hospital after the delivery. Appellant admitted to May that she had used methamphetamine four times while she was pregnant, including the day

before she was admitted to the hospital in labor. Appellant told May that she used a needle three of the four times she used methamphetamine while pregnant. Appellant told May that she thought the methamphetamine she used would go away and not show up in her child. May testified that appellant understood that her child was suffering from methamphetamine withdrawal.

We hold that, as the relevant statute is currently written and based on the specific facts and circumstances of this case, sufficient evidence was presented to support appellant's conviction in violation of section 5-13-210(b). Appellant admitted having used methamphetamine the day before she gave birth to her son, who was born very ill and exhibiting withdrawal symptoms. Because the State presented substantial evidence from which the jury could make that finding, the circuit court did not err by denying appellant's directed-verdict motion.[3]

II. *Jurisdiction*

Territorial jurisdiction over a criminal defendant is controlled by statute, and an appellate court need only find substantial evidence to support the finding of jurisdiction. *Powell v. State*, 97 Ark. App. 239, 246 S.W.3d 891 (2007). When an offense is committed partly in one county and partly in another, or the acts, or effects thereof, requisite to its consummation occur in two or more counties, jurisdiction lies in either county. Ark. Code

---

[3]We note that appellant initially made this argument, and others regarding jurisdiction, suppression of evidence, etc., via pretrial motions that the circuit court took under advisement after a pretrial hearing on January 7, 2014. Appellant renewed these motions at the conclusion of the State's case, albeit without much specificity or discussion. The circuit court again denied the motions, and appellant did not put on a defense.

SLIP OPINION

Ann. § 16-88-108(c) (Repl. 2005). Section 16-88-108(c) is designed to prevent miscarriages of justice by extending the lines of jurisdiction beyond the limits prescribed by the common law; therefore, it is remedial in nature and must be liberally construed. *Cloird v. State*, 352 Ark. 190, 99 S.W.3d 419 (2003). There is a presumption in favor of jurisdiction in the county where the charge is filed. *Ridling v. State*, 360 Ark. 424, 203 S.W.3d 63 (2005); Ark. Code Ann. § 5-1-111(b) (Repl. 2013). The State is not required to prove jurisdiction or venue unless evidence is admitted that affirmatively shows that the court lacks jurisdiction. Ark. Code Ann. § 5-1-111(b); Ark. Code Ann. § 16-88-104 (Repl. 2005) (presuming upon trial that the offense charged was committed within the jurisdiction of the court and that the court may pronounce the proper judgment accordingly unless the evidence affirmatively shows otherwise). The presumption can be overcome if positive evidence is admitted affirmatively showing jurisdiction to be lacking, and if such positive evidence is presented, the State must then offer evidence that jurisdiction is proper in the county where the case is being tried. *Ridling*, *supra*.

Appellant filed a pretrial motion to dismiss because she resides in Sevier County and was transported by ambulance to Mena Regional in Polk County, where her child was delivered. The State acknowledged that it had no evidence of any ingestion or injection into appellant occurring in Polk County and relied upon the child receiving the controlled substance through the placenta and umbilical cord after he had been born. The circuit court ruled that as far as any "introduction" of the substances, it would have continued during the period appellant came to the hospital in Polk County, and jurisdiction therefore would be proper.

Appellant notes that a criminal trial must be held in the county in which the crime was committed, provided venue may be changed, at the request of the accused to another county in the judicial district in which the indictment is found. Ark. Const. art. 2 §10; *see also Kemp v. State*, 324 Ark. 178, 919 S.W.2d 943 (1996) (limiting circuit courts to trying accusations of crimes that occurred in the counties, or judicial districts, in which they sit). She argues that the State provided no evidence to show that the substance was still passing through her body to the child in Polk County, Arkansas, and that the positive result could have been from the methamphetamine passing through the umbilical cord the day before and simply remaining in the child's system. No scientific evidence was offered as to when the controlled substance would have passed from mother to child or how long it would have taken. Also, appellant notes that the State relied on a natural body function as the act that occurred in Polk County, not anything that appellant knowingly, willingly, recklessly, or purposefully did while in Polk County.

We disagree. The evidence indicated that appellant, while pregnant, had used methamphetamine in Sevier County the day before she was admitted into Mena Regional in Polk County to deliver her child. Appellant's child was delivered in Polk County and tested positive for methamphetamine there. We hold that the circuit court's finding, that the introduction of a controlled substance that began in Sevier County would have continued in Polk County because the child was born with methamphetamine in his system and was suffering from withdrawal, was not error. Consequently, jurisdiction was proper in Polk County.

SLIP OPINION

III. *Injection Being in the Defendant and Not the Unborn Child*

Appellant reiterates that the only evidence that she introduced any controlled substance, even into her own body, indicated that it occurred the night before her delivery while she was in Sevier County. Additionally, she submits that there was no evidence of an inducement into the body of the child itself except through the placenta and umbilical cord through her natural body functions. The statute under which she is charged, section 5-13-210(b)(c)(2), refers to the introduction of a controlled substance into the body of another person, but that statute does not define "person."

The definition contained in Arkansas Code Annotated section 5-1-102(13)(A) defines a person to include (i) any natural person, and section 5-1-102(13)(B)(i)(a) states that "[a]s used in §§ 5-10-101–5-10-105, 'person' also includes an unborn child at any stage of development." Arkansas Code Annotated section 5-1-102(13)(B)(i)(b) states that "'unborn child' means offspring of human beings from conception until birth."

Appellant points out that there is no reference in section 5-13-210 to an unborn child, only the introduction of controlled substances into the body of "another person." In section 5-1-102, there is no definition that an unborn child is a person except in the homicide statutes, sections 5-10-101 to -105. Accordingly, appellant contends that her motion to dismiss should have been granted because the statute does not apply to an unborn child.

Appellant cites to *State v. Stegall*, 828 N.W.2d 526 (N.D. 2013), a North Dakota case that held that a pregnant woman cannot be charged for a crime allegedly committed against her unborn child. *See also State v. Geiser*, 763 N.W.2d 469 (N.D. 2009) (another North Dakota case which held that North Dakota statute NDCC § 19-03.1-22.2 does not apply

to an unborn child). We note that both *Stegall* and *Geiser* relied on a North Dakota statute expressly providing that age is to be calculated from birth. Arkansas does not have a similar statute, and her unborn child's "age" is not at issue in this case. The question is whether he was "another person."

Even assuming *arguendo*, that appellant is correct that section 5-13-210 does not protect an unborn child, she is not entitled to reversal. Although there is no specific evidence before us to indicate the exact time that appellant's newborn child's umbilical cord was cut following his birth, there was some amount of time that passed between the child's birth and its detachment from the umbilical cord through which he received nutrients and fluids from appellant. Accordingly, we hold that the circuit court correctly found that appellant gave birth to her child, who, once he was born undoubtedly was "another person" suffering from withdrawal from methamphetamine, which appellant caused him to ingest or otherwise introduced into him.

Affirmed.

HIXSON, J., agrees.

WHITEAKER, J., concurs.

**PHILLIP T. WHITEAKER, Judge, concurring.** I concur in the majority's determination. Under the specific facts and circumstances of this case, sufficient evidence was presented to find that 1) the appellant used a controlled substance within 24 hours of the delivery of her child; 2) the child tested positive for the controlled substance after birth; and 3) the controlled substance was transferred from the appellant to the child through the umbilical cord. These facts are sufficient to prove that the appellant "otherwise introduced"

SLIP OPINION

a controlled substance "into the human body of another person"—in this instance, her newborn child—through the umbilical cord after the child was born. *See* Ark. Code Ann. § 5-13-210 (Repl. 2013). I write separately simply to express my belief that, while this factual scenario may technically fit within the parameters of the statute as written, I do not believe the legislature intended for the statute to be utilized in this manner. If the legislature does in fact intend this statute to apply to an *in utero* transfer of a controlled substance from a mother to her child, it should amend the statute to make its intent patently clear.

*Randy Rainwater*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Ashley Argo Priest*, Ass't Att'y Gen., for appellee.