**Louis Jerry EDWARDS, M.D., on behalf of himself and his patients; Tom Tvedten, M.D., on behalf of himself and his patients, Plaintiffs–Appellees**

**v.**

**Joseph M. BECK, M.D., President of the Arkansas State Medical Board, and his successors in office, in their official capacity; Omar Atiq, M.D., offi-**

cer and member of the Arkansas State Medical Board, and his successors in office, in their official capacity; Harold B. Betton, M.D., officer and member of the Arkansas State Medical Board, and his successors in office, in their official capacity; Steven L. Cathey, M.D., officer and member of the Arkansas State Medical Board, and his successors in office, in their official capacity; Jim Citty, M.D., officer and member of the Arkansas State Medical Board, and his successors in office, in their official capacity; Bob Cogburn, M.D., officer and member of the Arkansas State Medical Board, and his successors in office, in their official capacity; William F. Dudding, M.D., officer and member of the Arkansas State Medical Board, and his successors in office, in their official capacity; Roger Harmon, M.D., officer and member of the Arkansas State Medical Board, and his successors in office, in their official capacity; John E. Hearnsberger, II, M.D., officer and member of the Arkansas State Medical Board, and his successors in office, in their official capacity; Verly Hodges, D.O., officer and member of the Arkansas State Medical Board, and his successors in office, in their official capacity; Scott Pace, Pharm. D., J.D., officer and member of the Arkansas State Medical Board, and his successors in office, in their official capacity; John H. Scribner, M.D., officer and member of the Arkansas State Medical Board, and his successors in office, in their official capacity; Sylvia D. Simon, M.D., officer and member of the Arkansas State Medical Board, and her successors in office, in their official capacity; John. Weiss, M.D., officer and member of

the Arkansas State Medical Board, and his successors in office, in their official capacity, Defendants–Appellants.

Curtis James Neeley, Jr.; Women Injured by Abortion; An Abortion Survivor; Liberty Council, Inc.; Concepts of Truth, Inc., Amici on Behalf of Appellant(s).

Physicians for Reproductive Health; National Abortion Federation; American Public Health Association, Amici on Behalf of Appellee(s).

No. 14–1891.

United States Court of Appeals, Eighth Circuit.

Submitted: Jan. 13, 2015.

Filed: May 27, 2015.

Rehearing and Rehearing En Banc Denied July 9, 2015.

Colin Jorgensen, argued, Assistant Attorney General, Little Rock, AR (Mr. Curtis Neeley, Jr., Fayetteville, AR, Allan Parker, Jr., San Antonio, TX, and Kathleen Cassidy Goodman, Helotes, TX, Matthew Staver, Anita Staver, Orlando, FL, of Orlando, FL, Mary E. McAlister and Daniel Schmid, Lynchburg, VA on the brief), for Defendants–Appellants.

Susan Talcott Camp, argued, New York, N.Y. (Bettina E. Brownstein, Holly Elizabeth Dickson, Little Rock, AR, Stephanie Toti, Claude Szyfer, Shannon Selden, Courtney Dankworth, and Marjorie Menza, New York, N.Y., on the brief), for Plaintiffs–Appellees.

Before SMITH, BENTON, and SHEPHERD, Circuit Judges.

PER CURIAM.

The Arkansas State Medical Board (the State) appeals from a summary judgment permanently enjoining certain sections of the Arkansas Human Heartbeat Protection Act. Ark.Code Ann. §§ 20–16–1301 to 1307 (2013). Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

The Act provides that a licensed physician "shall not perform an abortion on a

pregnant woman before the person tests the pregnant woman to determine whether the fetus that a pregnant woman is carrying possesses a detectible heartbeat." Ark.Code Ann. § 20–16–1303(a) (footnote omitted). Further, a physician "shall not perform an abortion on a pregnant woman with the specific intent of causing or abetting the termination of the life of an unborn human individual whose heartbeat has been detected under § 20–15–1303 and is twelve (12) weeks or greater gestation." § 20–16–1304(a). If a physician violates section 1304, his or her medical license shall be revoked. § 20–16–1304(b). The Act provides exceptions to protect the life of the mother, for a pregnancy resulting from rape or incest, or for a medical emergency. § 20–16–1305. The Act requires informed disclosures about the existence of a heartbeat and the probability of bringing the unborn to term. § 20–16–1303(d), (e).

Two Arkansas physicians, on behalf of themselves and their patients, challenged the constitutionality of the Act, seeking a permanent injunction. The district court[1] granted a temporary injunction. *Edwards v. Beck*, 946 F.Supp.2d 843, 851 (E.D.Ark. 2013). The State moved for partial summary judgment, arguing the testing and disclosure provisions were valid and severable. The plaintiffs submitted affidavits that a fetus is generally not viable until 24 weeks' gestation, is never viable at 12 weeks, and, in all normally-progressing pregnancies, has a detectable heartbeat by 12 weeks.

The State left the plaintiffs' factual allegations uncontroverted. The only factual record presented in this case was by plaintiffs, the two-page declaration of Dr. Janet Cathey. Dr. Cathey stated that "[a]t twelve (12) weeks of pregnancy, a fetus cannot in any circumstance survive outside the uterus. Thus, a fetus at 12 weeks is not and cannot be viable." (Cathey Dec. at 2.) As the district court noted, "the State offered no competing evidence challenging Dr. Cathey's testimony or the statistical data referenced in Plaintiffs' brief." (Order at 8.) The district court granted summary judgment, permanently enjoining sections 20–16–1303(d)(3) and 20–16–1304. *Edwards v. Beck*, 8 F.Supp.3d 1091, 1102 (E.D.Ark.2014).

The court granted summary judgment to the State on the rest of the Act, finding the testing and informed disclosures valid and severable. *See Webster v. Reproductive Health Services*, 492 U.S. 490, 519–20, 109 S.Ct. 3040, 106 L.Ed.2d 410 (1989) (upholding Missouri's 20–week viability testing requirement); *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 734–35 (8th Cir.2008) (en banc) ("[W]hile the State cannot compel an individual simply to speak the State's ideological message, it can use its regulatory authority to require a physician to provide truthful, non-misleading information relevant to a patient's decision to have an abortion, even if that information might also encourage the patient to choose childbirth over abortion."). The State appeals the district court's grant of summary judgment and permanent injunction of sections 20–16–1303(d)(3) and 20–16–1304.

This court reviews summary judgment de novo, and a permanent injunction for abuse of discretion. *Roach v. Stouffer*, 560 F.3d 860, 864 (8th Cir.2009).

 In 1992, the Supreme Court "reaffirm[ed]" the "right of the woman to choose to have an abortion before viability and to obtain it without undue interference

---

1. The Honorable Susan Webber Wright, United States District Judge for the Eastern District of Arkansas.

from the State." *Planned Parenthood of Southeastern Pa. v. Casey,* 505 U.S. 833, 846, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992).[2] Since then, that principle has been "accepted as controlling" by a majority of the Court. *See Gonzales v. Carhart,* 550 U.S. 124, 156, 127 S.Ct. 1610, 167 L.Ed.2d 480 (2007); *see also id.* at 187, 127 S.Ct. 1610 (Ginsburg, J., dissenting) (recognizing that the Court "merely 'assume[d]' for the moment" the "continuing vitality" of the rule and criticizing the Court for not "retain[ing]" or "reaffirm[ing]" the principle). Like the Court in *Gonzales,* "[w]e assume the ... principles [from *Casey* ] for the purposes of this opinion." *Id.* at 146, 127 S.Ct. 1610. A state also retains interests in fostering maternal health and protecting unborn life, which justify regulations that are not an undue burden on a woman's ability to terminate her pregnancy before viability. *Casey,* 505 U.S. at 877–78, 112 S.Ct. 2791. A regulation is an undue burden if it "has the purpose or effect of placing a substantial obstacle in the path of a woman seeking an abortion of a nonviable fetus." *Id.* at 877, 112 S.Ct. 2791.

 The State tries to frame the law as a regulation, not a ban, on pre-viability abortions because they are available during the first 12 weeks (and thereafter if within the exceptions). Whether or not "exceptions are made for particular circumstances, a State may not prohibit any woman from making the ultimate decision to terminate her pregnancy before viability." *Id.* at 879, 112 S.Ct. 2791. By banning abortions after 12 weeks' gestation, the Act prohibits women from making the ultimate decision to terminate a pregnancy at a point before viability. Because the

State made no attempt to refute the plaintiffs' assertions of fact, the district court's summary judgment order must be affirmed. *See* Fed.R.Civ.P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.") *and* (e)(2) ("If a party ... fails to properly address another party's assertion of fact as required by Rule 56(c), the court may ... consider the fact undisputed for purposes of the motion."). *See also Casey,* 505 U.S. at 874, 112 S.Ct. 2791.

## II.

As an intermediate court of appeals, this court is *bound* by the Supreme Court's decisions in *Casey* and the "assum[ption]" of *Casey's* "principles" in *Gonzales. See Gonzales,* 550 U.S. at 146, 127 S.Ct. 1610. However, undeniably, medical and technological advances along with mankind's ever increasing knowledge of prenatal life since the Court decided *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) and *Casey* make application of *Casey's* viability standard more difficult and render more critical the parties' obligation to assure that the court has the benefit of an adequate scientific record in cases where the standard is applied.

"The Supreme Court has recognized that viability varies among pregnancies and that improvements in medical technology will both push later in pregnancy the point at which abortion is safer than childbirth and advance earlier in gestation the point of fetal viability." *Isaacson v. Horne,* 716 F.3d 1213, 1224 (9th Cir.2013)

---

2. The other principles "reaffirm[ed]" in *Casey* include "a confirmation of the State's power to restrict abortions after fetal viability, if the law contains exceptions for pregnancies which endanger the woman's life or health"

and "the State has legitimate interests from the outset of the pregnancy in protecting the health of the woman and the life of the fetus that may become a child." *Casey,* 505 U.S. at 846, 112 S.Ct. 2791.

(citing *Casey*, 505 U.S. at 860, 112 ·S.Ct. 2791). The viability standard "is clearly on a collision course with itself." *City of Akron v. Akron Ctr. for Reprod. Health, Inc.*, 462 U.S. 416, 458, 103 S.Ct. 2481, 76 L.Ed.2d 687 (1983) (O'Connor, J., dissenting). "As medical science becomes better able to provide for the separate existence of the fetus, the point of viability is moved further back toward conception." *Id.* (O'Connor, J., dissenting).

And we have witnessed in the four decades since the Court decided *Roe* how scientific advancements have moved the viability point back. When *Roe* was decided, "[v]iability [was] usually placed at about seven months (28 weeks) but [could] occur earlier, even at 24 weeks." *Roe*, 410 U.S. at 160, 93 S.Ct. 705 (footnote omitted). But the joint opinion in *Casey* recognized "how time has overtaken some of *Roe's* factual assumptions," including that "advances in neonatal care have advanced viability to a point somewhat earlier." *Casey*, 505 U.S. at 860, 112 S.Ct. 2791 (citations omitted). And, in the present case, Dr. Janet Cathey, a board-certified obstetrician and gynecologist, averred that "viability generally is not possible until at least 24 weeks" but recognized that the "viability determination varies on an *individual basis*." (Emphasis added.) Indeed, real-life events have proven the *individuality* of the viability determination to be true.

Greater survival rates among pre-term infants born at earlier stages push back the viability line. In October, 2006, Amillia Taylor was born at twenty-one weeks and six days, and has thus far been resilient in the face of minimal odds of survival. This is the youngest fetus to have ever survived · delivery, raising new questions about where the viability line should be drawn.

Kevin J. Mitchell, *Guarding the Threshold of Birth*, 20 Regent U.L.Rev. 257, 264 n. 30 (2008) (citing Pat Wingert; *The Baby Who's Not Supposed to be Alive*, NEWSWEEK, Mar. 5, 2007, at 59, *available at* http://www. msnbc.msn.com/id/17304274/site/newsweek); *see also* Aida Edemariam, *Against All Odds*, Guardian (Feb. 20, 2007), *available at* http://www.theguardian.com/ society/2007/feb/21/health.lifeandhealth (last visited April 28, 2015) ("There is something otherworldly about the picture that appeared around the world yesterday: two tiny brown-pink feet, almost translucent, poking through an adult's · fingers. You had to look twice to be sure that they were indeed feet. They belong to Amillia Taylor, who was born in Miami last October,· 21 weeks and six days after conception. She weighed less than 10oz at birth-not even as much as two ordinary bars of soap-and she was just 9 inches long. Amillia, who is expected to be discharged from hospital in the next couple of days, is officially the most premature baby ever to have survived.").

 "Since *Roe* was decided in 1973, advances in medical and scientific technology have greatly expanded our knowledge of prenatal life." *Hamilton v. Scott*, 97 So.3d 728, 742 (Ala.2012) (Parker, J., concurring specially). The viability standard "is inherently tied to the state of medical technology that exists whenever particular litigation ensues." *City of Akron*, 462 U.S. at 458, 103 S.Ct. 2481 (O'Connor, J., dissenting). As shown *supra*, states in the 1970s lacked the power to ban an abortion of a 24–week–old–fetus because that fetus would have not satisfied the viability standard of that time period. *See Roe*, 410 U.S. at 160, 93 S.Ct. 705 (placing viability at "seven months (28 weeks)"). Today, however, that same fetus would be considered "viable," and states would have the "power to restrict [such] abortions." *Casey*, 505 U.S. at 846, 112 S.Ct. 2791.

 Because a viability determination necessarily calls for a case-by-case deter-

mination and changes over time based on medical advancements, "legislatures are better suited to make the necessary factual judgments in this area." *City of Akron*, 462 U.S. at 458, 103 S.Ct. 2481 (O'Connor, J., dissenting). Unfortunately, the viability standard "forces legislatures, as a matter of constitutional law, to speculate about what constitutes [viability] at any given time." *Id.* (O'Connor, J., dissenting). Courts are ill-suited to second-guess these legislative judgments. *See id.* (O'Connor, J., dissenting) ("Without the necessary expertise or ability, courts must then pretend to act as science review boards and examine those legislative judgments."). To substitute its own preference to that of the legislature in this area is *not* the proper role of a court. *See* Federalist No. 78 ("It can be of no weight to say that the courts, on the pretense of a repugnancy, may substitute their own pleasure to the constitutional intentions of the legislature. This might as well happen in the case of two contradictory statutes; or it might as well happen in every adjudication upon any single statute. The courts must declare the sense of the law; and if they should be disposed to exercise WILL instead of JUDGMENT, the consequence would equally be the substitution of their pleasure to that of the legislative body. The observation, if it prove any thing, would prove that there ought to be no judges distinct from that body.").

This case underscores the importance of the parties, particularly the state, developing the record in a meaningful way so as to present a real opportunity for the court to examine viability, case by case, as viability steadily moves back towards conception.

 \* \* \* \* \* \*

The judgment is affirmed.