SLIP OPINION

Cite as 2015 Ark. 364

# SUPREME COURT OF ARKANSAS

No. CR–15–124

| | |
|---|---|
| MELISSA McCANN ARMS<br><div align="right">APPELLANT</div><br>V.<br><br>STATE OF ARKANSAS<br><div align="right">APPELLEE</div> | **Opinion Delivered** October 8, 2015<br><br>APPEAL FROM THE POLK<br>COUNTY CIRCUIT COURT<br>[NO. CR–2013-104]<br><br>HONORABLE J.W. LOONEY, JUDGE<br><br><u>REVERSED AND DISMISSED;<br>COURT OF APPEALS OPINION<br>VACATED</u>. |

**JOSEPHINE LINKER HART, Justice**

A Polk County jury convicted Melissa McCann Arms of the introduction of a controlled substance into the body of another person. She was sentenced to twenty years in the Arkansas Department of Correction. On appeal, Arms argues that the circuit court erred in (1) not granting her directed-verdict motion; (2) not granting her motion to dismiss for lack of jurisdiction when there was no evidence that she consumed or introduced, ingested or inhaled any controlled substance in the body of another while in Polk County; and (3) not granting her motion to dismiss based upon the injection being in the defendant and not her unborn child.

This case was originally filed in the court of appeals, which affirmed Arms's conviction. *Arms v. State*, 2015 Ark. App. 27, 453 S.W.3d 709. We granted Arms's petition for review. When we grant a petition to review a decision of the court of appeals, we treat the matter as if the appeal had been originally filed in this court. *Pickle v. State*, 2015 Ark. 286, ___ S.W.3d ____.

On August 27, 2013, Arms was charged by information in Polk County with introducing two controlled substances, codeine and methamphetamine, into the body of her baby, J.A., on or about November 1, 2012. Prior to trial, Arms moved to dismiss the charges, asserting that the Polk County Circuit Court lacked jurisdiction and venue to try her case. She asserted that she resided in Sevier County and was transported by ambulance from her home in DeQueen, which is in Sevier County, to Mena Regional Medical Center in Polk County. Her child was born in Mena. She alleged that she had taken no drugs in Polk County prior to the birth of her child.

Arms subsequently filed a second motion to dismiss, asserting that she was charged under a statute that did not mention unborn children. She argued that the controlled substance was introduced only into her body and that there was no evidence of the introduction of the controlled substance into the infant after it had been born. The circuit court denied both motions. It found that any "introduction" of substances would have continued during the period Arms was in the hospital. Further, while the circuit court conceded that the statute did not mention an unborn child, it found that the "introduction," if it occurred, would have continued for a time after the birth of the child. Finally, the circuit court ruled that, for the purposes of this statute, a human body would include a fetus. The State nol–prossed the count involving codeine, and Arms proceeded to trial on the charge of introducing methamphetamine into the body of her child.

Amber Williams, a registered nurse employed by Mena Regional Health System (Mena Regional), testified that on November 1, 2012, Arms arrived at Mena Regional by

ambulance. Arms showed signs of being in labor, so Williams admitted Arms to the hospital. Williams testified that the emergency-medical personnel told her that appellant was acting very erratic and out of control, and she recalled seeing Arms "thrashing in the bed," and acting "very out of control." As a routine part of the initial assessment, Williams asked and Arms denied having taken any drugs. Williams stated that she had reason to doubt Arms's denial and, because of Arms's unusual behavior, she contacted the police.

Stacie Floyd, another registered nurse at Mena Regional, testified that she came into contact with Arms soon after she was admitted to the hospital. Floyd stated that Arms was acting atypically for someone in the early stages of labor. It was hard for the staff to keep Arms in bed and on the monitor. A toxicology screen was ordered for Arms, and, according to Floyd, she was present when Arms was confronted with the results of the baby's drug test. Arms denied taking drugs, but stated that she was at a party and something might have been put in her food.

Registered nurse Amber Cobb testified that she was working at Mena Regional when Arms gave birth. According to Cobb, she performed the delivery. She recalled that Arms's urine tested positive for methamphetamine. When she told Arms the results, Arms became very angry and upset. Nonetheless, Arms denied using any illegal substances. Arms was crying hysterically, almost to the point of hyperventilating. She opined that Arms's reaction caused the baby's fetal heart rate to drop to an abnormally low level. When the child was born, Cobb recalled that he did not cry, even after being stimulated. He was flaccid and limp and had a facial droop on one side of his face. Cobb further testified that when a baby is

delivered, there is a period of time when the umbilical cord is attached and the baby is outside the womb. The cord is cut within a few seconds to a few minutes.

Elena Cannon, investigator for the Polk County Prosecuting Attorney's office, testified that she served a search warrant on Arms to take blood and urine samples while Arms was in labor. The warrant also authorized samples to be taken from the child. The samples were taken to the Arkansas State Crime Lab (Crime Lab) in Little Rock.

Leanne Hazard, a forensic toxicologist for the Crime Lab, testified that she performed tests on the blood drawn from Arms's baby. The samples tested positive for codeine, amphetamine, methamphetamine, norfentanyl, and lidocaine. Don Riddle, also a forensic toxicologist with the Crime Lab, testified that he tested Arms's blood and urine and the baby's urine. He stated that Arms's samples tested positive for methamphetamine. He also found evidence of amphetamine in the baby's urine.

Registered nurse Patina Fair testified that she cared for Arms's child while he was in the nursery. She stated that the child exhibited the signs associated with withdrawal from a controlled substance. According to Fair, she spoke with Arms right before she took the child to the nursery, and Arms admitted to her that she "did this" to the child. Fair told Arms that the baby was suffering withdrawal from methamphetamine use.

Michael May, the Senior Investigator for the 18th West Judicial District Drug Task Force, testified that he was asked by Elena Cannon to assist in the investigation. Together, they interviewed Arms at the hospital after the delivery. Arms consented to the interview and admitted that she had used methamphetamine four times while she was pregnant, including

SLIP OPINION

the day before she was admitted to the hospital in labor. Appellant told May that she injected methamphetamine three of the four times during her pregnancy, but aside from a few "puffs on a bowl" on Halloween, her intravenous use of methamphetamine was a month, to a month and a half earlier.

At the close of the State's case, Arms moved for a directed verdict. She stated,

> The State has not proven that the Defendant did cause to be ingested, inhaled or otherwise introduced into the human body of another person a controlled substance, specifically methamphetamine. We still have the same elements here of the human body and the ingested or ingested or inhaled or otherwise introduced.

The State countered that Arms admitted she had ingested methamphetamine while pregnant, and the drug was transmitted through the umbilical cord to the child. The circuit court denied Arms's directed-verdict motion. Arms also renewed her motions to dismiss, which were likewise denied. Arms was convicted as charged.

On appeal, Arms first argues that the circuit court erred in not granting her directed-verdict motion. She asserts that Arkansas Code Annotated section 5-13-210(b)(c)(1) does not mention fetus or unborn child. She further argues that the evidence is clear that she did not introduce a controlled substance into her own body or the body of her child while in Polk County. She concedes that the unborn child "may have absorbed" some controlled substance from the mother, but further asserts that there is no evidence that she injected the controlled substance directly into the body of the child before it was born.

This court treats a motion for directed verdict as a challenge to the sufficiency of the evidence. *Sweet v. State*, 2011 Ark. 20, 370 S.W.3d 519. In our review, this court determines whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.*

Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. *Id.* We view the evidence in the light most favorable to the verdict, and we consider only the evidence supporting the verdict. *Id.* In our review, we leave matters of credibility to the trier of fact; the trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Id.*

Arkansas Code Annotated section 5-13-210 (Repl. 2013), states in pertinent part:

(b) It is unlawful for any person to administer or cause to be ingested, inhaled, or otherwise introduced into the human body of another person a controlled substance as defined by the Uniform Controlled Substances Act, § 5-64-101 et seq., unless the controlled substance has been ordered for the person receiving the controlled substance by a licensed practitioner, licensed by the state to prescribe controlled substances in the schedule involved and this being for a legitimate medical purpose.

(c) Any person who violates this section with respect to:
. . .

(2) Any other controlled substance in Schedule I, Schedule II, or Schedule III is guilty of a Class B felony.

We first note that section 5-13-210 refers only to a "person." It makes no mention of a fetus or an unborn child. Our criminal code does define a fetus as a "person," but only for certain homicide offenses. Arkansas Code Annotated section 5-1-102 in pertinent part states:

(13)(A) "Person," "actor," "defendant," "he," "she," "her," or "him" includes:

(i) Any natural person; and

. . .

(B)(i)(a) As used in §§ 5-10-101– 5-10-105, "person" also includes an unborn child

6

SLIP OPINION

in utero at any stage of development.

 . . .

(iii) Nothing in this subdivision (13)(B) shall be construed to allow the charging or conviction of a woman with any criminal offense in the death of her own unborn child in utero.

Significantly, our criminal code expressly limits criminalizing conduct with respect to an unborn child to homicide offenses, and even then, does not allow a mother to be charged or convicted of any homicide offense while her child is in utero.  As part of our strict construction, we are guided by the maxim *expressio unius est exclusio alterius*—the express inclusion of an unborn child with regard to homicide offenses excludes a similar inclusion for nonhomicide offenses.  *See Bolin v. State*, 2015 Ark. 149, 459 S.W.3d 788.  Accordingly, none of Arms's conduct could offend section 5-13-210 while her child was in utero.  We must therefore focus on the evidence as it relates to Arms's conduct during the narrow window of time when the child was outside the womb, but still attached to the placenta by the umbilical cord.

The record is completely devoid of any evidence that Arms directly introduced methamphetamine into her baby's system by causing the child to ingest or inhale it.  Therefore, to sustain this conviction, this court would be required to construe section 5-13-210 to mean that Arms's own use of the drug meant "otherwise introduc[ing]" it to the child.  We note that there was no evidence of an ongoing transfer of the methamphetamine that was in Arms's system after the child was born.  The jury would thus have been forced to speculate that Arms was "otherwise introducing" the drug into the child at that point.  When a jury reaches its conclusion by resorting to speculation or conjecture, the verdict is not supported

7

by substantial evidence, and we must reverse and dismiss the charges. *Pridgett v. State*, 276 Ark. 52, 631 S.W.2d 833 (1982). However, there is an even more fundamental problem with the State's proof. Section 5-13-210 does not expressly criminalize the passive bodily processes that results in a mother's use of a drug entering her unborn, or newborn child's system. Further under the cannon of construction *ejusdem generis*, which provides that "when general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words," section 5-13-210 cannot be construed to include such a passive process. *See Edwards v. Campbell*, 2010 Ark. 398, 370 S.W.3d 250. The other enumerated conduct criminalized by section 5-13-210, "to administer or cause to be ingested, inhaled" entail an active undertaking to dose another person with a controlled substance. Thus, "otherwise introduced" must be interpreted to refer to an active process. Accordingly, Arms's conviction cannot stand. Our construction of criminal statutes is strict, and we resolve any doubts in favor of the defendant. *Heikkila v. State*, 352 Ark. 87, 98 S.W.3d 805 (2003). The courts cannot, through construction of a statute, create a criminal offense that is not in express terms created by the Legislature. *Id*. We do not have the authority to declare that an act is within the criminal laws of this state by implication. *Id*. We therefore reverse and dismiss Arms's conviction. Because we reverse and dismiss on this point, we need not consider Arms's other arguments.

Reversed and dismissed; court of appeals opinion vacated.

BRILL, C.J., and WOOD, J. concur.

HOWARD W. BRILL, Chief Justice, concurring. I agree with the majority that this case should be reversed and dismissed. I write separately to set forth my rationale.

Arkansas Code Annotated section 5-13-210(b) (Repl. 2013) states that

[i]t is unlawful for any person to administer or cause to be ingested, inhaled, or otherwise introduced into the human body of another person a controlled substance as defined by the Uniform Controlled Substances Act, § 5-64-101 et seq., unless the controlled substance has been ordered for the person receiving the controlled substance by a licensed practitioner, licensed by the state to prescribe controlled substances in the schedule involved and this being for a legitimate medical purpose.

The scope of this statute presents the issue for this court. No one would dispute, for example, that the statute prohibits a parent from feeding a child marijuana-laced brownies. Likewise, no one would reasonably contend that a nursing mother suffering from nasal congestion who ingests a controlled substance such as Schedule V pseudoephedrine should be prosecuted if the substance is transferred into her milk and absorbed by her infant.

In this case, Arms admitted that she had injected methamphetamine three times while pregnant. She admitted that she had smoked methamphetamine the day before she was admitted to the hospital in labor. Both Arms and her newborn son tested positive for methamphetamine, and the baby exhibited symptoms of withdrawal. The issue is whether Arms's conduct falls within those actions proscribed by section 5-13-210(b).

The State contends that the circuit court did not err in concluding that the statute applied in this case because Arms's unborn child was considered a "person" under section 5-13-210(b). Further, the State contends that, although Arms may be correct in stating that section 5-13-210 does not expressly include the term "unborn child," Arkansas law

9

nonetheless clearly establishes that fetuses are entitled to protections that the law otherwise accords to persons. Finally, it argues that the "otherwise introduced" language encompasses the transmission of a controlled substance through the umbilical cord in the immediate minutes after the birth of the baby.

In its definitions in the criminal code, the legislature in 1999 adopted Act 1273, amending Arkansas Code Annotated section 5-1-102 to include "unborn child" within the definition of "person" for homicide offenses. *See* Michael S. Robbins, Comment, *The Fetal Protection Act: Redefining "Person" for the Purposes of Arkansas' Criminal Homicide Statutes*, 54 Ark. L. Rev. 75 (2001) (discussing the historical treatment of unborn children in the law). The protection of unborn children is likewise found in Arkansas Code Annotated section 5-13-201(a)(5), which states that a person commits first-degree battery if with the purpose of causing serious physical injury to an unborn child or to a woman who is "pregnant with an unborn child," the person causes serious physical injury to the unborn child. Moreover, in certain circumstances, a pregnant woman is justified in using physical force or deadly physical force against another person to protect her unborn child. *See* Ark. Code Ann. § 5-2-615 (Repl. 2013).

What is clear from these enactments is that when the legislature intends to include "unborn child" within the definition of "person," or it intends to afford protection to unborn children, it expressly does so in the statute. The criminal code defines "person" as "[a]ny natural person," and "[w]hen appropriate, an organization as defined in § 5-2-501." Ark. Code Ann. § 5-1-102(13)(A) (Repl. 2013). However, the criminal-code definition of

"person" is expressly expanded to include "unborn child" only in cases of homicide. *See id.* § 5-1-102(13)(B).

The legislature has chosen not to include "unborn child" within the definition of "person" for the purposes of section 5-13-210(b).[1] And it is the legislature, not the court, that determines the kind of conduct that constitutes a crime. *See Sparrow v. State*, 284 Ark. 396, 683 S.W.2d 218 (1985); *see also Meadows v. State*, 291 Ark. 105, 722 S.W.2d 584 (1987) (declining to create a common-law crime for the reckless killing of an unborn fetus when the legislative intent shown, if any, is that the killing of a viable fetus is not manslaughter).

It is reasonable to infer that Arms's use of methamphetamine during her pregnancy offends the public policy of this state. As determined by the people, Arkansas public policy "is to protect the life of every unborn child from conception until birth, to the extent permitted by the Federal Constitution." Ark. Const. amend. LXVIII, § 2.[2] But the amendment is not a self-executing provision that criminalizes all conduct that might affect the health of an unborn child. "[F]or a constitutional provision to be self-executing, there must be language in the provision indicating that it 'is intended as a present enactment, complete in itself as definitive legislation, or contemplates subsequent legislation to carry it

---

[1]In the 2015 legislative session, HB 1376, which would have amended section 5-1-102(13)(B)(i)(a) to add section 5-13-210 to the enumerated statutes in which "unborn child" is included within the definition of "person," died in the House at sine die adjournment.

[2]The state has a compelling interest in protecting potential human life at the point of viability. *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833 (1992); *Roe v. Wade*, 410 U.S. 113 (1973); *see also Edwards v. Beck*, 786 F.3d 1113, 1119 (8th Cir. 2015) (recognizing that "viability steadily moves back towards conception").

into effect.'" *Knowlton v. Ward*, 318 Ark. 867, 875, 889 S.W.2d 721, 726 (1994) (quoting

*Myhand v. Erwin*, 231 Ark. 444, 452, 330 S.W.2d 68, 72–73 (1959) citing 16 C.J.S.

*Constitutional Law* § 48, at 146 (1956))). It is self-executing if

> it supplies a sufficient rule by means of which the right given may be enjoyed and protected, or the duty imposed may be enforced; and it is not self-executing when it merely indicates principles, without laying down rules by means of which those principles may be given the force of law.

*Knowlton*, 318 Ark. at 875, 889 S.W.2d at 726 (quoting Thomas M. Cooley, Constitutional

Limitations 121 (7th ed. 1903)). Although amendment 68 reflects the public policy of this

state, it does not provide any means to effectuate the policy. *See id.*, 889 S.W.2d at 726.

Rather, the policy expressed in the amendment has been given the force of law through

legislative enactments, and this court has recognized that legislative action is necessary to

clarify whether a statute applies to an unborn child or a viable fetus.[3]

No one wishes to discourage pregnant women who are fighting an addiction from

---

[3]For example, in *Arkansas Department of Human Services v. Collier*, 351 Ark. 506, 95 S.W.3d 772 (2006), we held that the statutory definition of a child ("birth to age 18") in the juvenile code did not authorize a court to take an unborn child into custody. In *Chatelain v. Kelley*, 322 Ark. 517, 910 S.W.2d 215 (1995), we held that the wrongful-death statute did not cover the death of an unborn child. *See* Brenda Daugherty Snow, Note, *A Viable Fetus is Not a "Person" Under the Arkansas Wrongful Death Statute. Chatelain v. Kelley*, 322 Ark. 517, 910 S.W.2d 215 (1995), 19 U. Ark. Little Rock L.J. 307 (1997). The legislature responded to that decision by amending the wrongful-death statute to expressly include "viable fetus." *See* Act of Apr. 12, 2001, No. 1516, 2001 Ark. Acts 6068, codified at Ark. Code Ann. § 16-62-101(a)(1). In partial reliance on "the current expression of legislative intent," we overruled *Chatelain*, just one month after the statute was enacted. *See Aka v. Jefferson Hosp. Ass'n, Inc.*, 344 Ark. 627, 641, 42 S.W.3d 508, 519 (2001); *see also* Raina Weaver, Note, *The Birth of Fetal Rights Under Arkansas's Wrongful Death Statute: The Arkansas Supreme Court Recognizes a Fetus as a "Person." Aka v. Jefferson Hospital Ass'n, Inc.*, 344 Ark. 627, 42 S.W.3d 508 (2001), 24 U. Ark. Little Rock L. Rev. 359 (2002).

seeking treatment and rehabilitation for substance abuse. The argument has been made that criminal prosecutions will have that effect. However, that balancing of legitimate policies is to be made by the legislature, and not by this court.[4] Just as criminal convictions cannot be based on general statements of policy or legislative intent alone, they cannot be set aside because of perceived public-health issues.

Because the conduct at issue in this case was not expressly included by the legislature[5] when it enacted section 5-13-210, I am compelled to reverse and dismiss.

**RHONDA K. WOOD, Justice, concurring.** I concur with the majority opinion that this case should be reversed and dismissed. However, I depart from the opinion's concluding remarks, which suggest that section 5-13-210 could never include the transfer of a controlled substance through a passive bodily function. We can decide this appeal without addressing this issue, so the majority's final comments are purely advisory. The briefs in this case focused on two questions: whether the definition of "person" from section § 5-13-210 includes an

---

[4]HB 1376 of 2015 included this statement of legislative intent:

The General Assembly encourages circuit judges and prosecuting attorneys to permit a woman charged under § 5-13-210 when the woman was carrying an unborn child in utero and the commission of the offense resulted in the death of or other injury to that unborn child to enter into substance abuse treatment and rehabilitation as opposed to being convicted and sentenced under § 5-13-210.

[5]"[T]he Legislature must have defined the crime, and the act in question must clearly appear to be within the prohibitions or requirements of the statute." *Green v. Jones*, 168 Ark. 423, 428, 270 S.W.2d 515, 516 (1925) (quoting *Black of Interpretation of Laws*, § 114). "What the Legislature has, from inadvertence or otherwise, omitted to include within the express provisions of a penal law, reasonably construed, the courts cannot supply." *Id.*, 270 S.W.2d at 516.

unborn person and whether sufficient evidence supports the verdict. At no point did appellant, the State, or amici analyze whether "otherwise introduced" excludes a passive bodily function.[1] Nor did appellant raise at trial the argument that "otherwise introduced" could not include a passive transfer through the umbilical cord post-delivery. Instead, she limited her argument concerning post-delivery transfer to the insufficiency of the evidence.[2] We have repeatedly held that we will not address an issue not raised and ruled on by the trial court and to otherwise would be to issue an advisory opinion, which we will not do. *See, e.g.*, *Johnson v. State*, 314 Ark. 471, 863 S.W.2d 305 (1993) (holding the constitutional issue was not preserved and thus declining to issue an advisory opinion).

Rather than ruling on an undeveloped issue, I would reverse simply because the evidence was insufficient. On this point I agree with the majority that there was no evidence presented at trial that methamphetamine transferred from appellant to her child via the umbilical cord in the short moments post-delivery. I also agree with the majority that, under our rules of statutory construction, section 5-13-210 cannot be read to include an unborn child. The General Assembly specifically amended the homicide offenses to include an unborn

---

[1] Appellant did argue that she could not be convicted of the crime because she failed to commit a voluntary act. Ark. Code Ann. § 5-2-204(a) (Repl. 2013) ("A person does not commit an offense unless his or her liability is based on conduct that includes a voluntary act"). Appellant even cited two cases from other jurisdictions to support this proposition. *See State v. Armstard*, 991 So.2d 116 (La. Ct. App. 2008); *Johnson v. State*, 602 So.2d 1288 (Fla. 1992). However, whether appellant committed a voluntary act per Ark. Code Ann. § 5-2-204 is a different question from whether "otherwise introduced" from section 5-13-210 has a definition that excludes passive bodily functions.

[2] As discussed *infra*, appellant's only statutory-construction argument related to whether an unborn child was a person under section 5-13-210.

child, but failed to likewise amend section 5-13-210.[3] Should it intend otherwise, the General Assembly can amend the relevant statutes to criminalize the introduction of drugs by a mother to her unborn child.

*Randy Rainwater*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Ashley Argo Priest*, Ass't Att'y Gen., for appellee.

---

[3] In addition, we cannot ignore that the General Assembly specifically excluded a mother from prosecution for the homicide of her unborn child. Ark. Code Ann. § 5-1-102(13)(B)(iii).